396 S.E.2d 166

The **BOARD OF EDUCATION OF the COUNTY OF HARRISON**

v.

Karen **BOWERS.**

Ronald A. **FRAGALE**

v.

**HARRISON COUNTY BOARD OF EDUCATION.**

Nos. 19200, 19201.

Supreme Court of Appeals of West Virginia.

July 11, 1990.

---

Norman T. Farley, Romano & Dieringer, Clarksburg, for Harrison County Bd. of Educ.

Jennifer N. Taylor, Hunt & Wilson, Charleston, for Karen Bowers.

Larry Harless, Charleston, for Ronald A. Fragale.

WORKMAN, Justice:

We have consolidated these two cases to address the issue of whether the cumulative seniority of a teacher who holds an administrative directorship within the central office of a county board of education entitles her to "bump" another director when her position is eliminated due to a reduction in force (RIF). Although the pertinent facts of these two cases are virtually indistinguishable, a different result obtained both at the culmination of the grievance stage and following the appeal of each teacher's grievance. The inconsistent results can be further gleaned from the procedural history of each teacher's grievance.

### RONALD A. FRAGALE

Mr. Fragale was first employed by the Harrison County Board of Education ("Board") as a teacher of business education on July 1, 1974. Mr. Fragale has a Bachelor of Arts degree in business management and a Master of Arts degree in health education. He is certified to teach in the following areas: Business Education, grades 7 through 12; Health and Physical Education, grades 7 through 12; Safety Education, grades 7 through 12; and Principal, grades 7 through 12.

From July 1, 1975, through June 30, 1981, Mr. Fragale was a teacher of physical education and a basketball coach. He first entered the administrative arena on July 1, 1981, when he was employed as the Coordinator of Community Use of Facilities with additional duties of Coordinator of Sports and Extracurricular Activities being incorporated into his job description during his first year of employment in that position. Just prior to the 1985–86 school year, Mr. Fragale also assumed the duties of Coordinator of Physical Education, Health and Safety. Effective July 1, 1986, Mr. Fragale was employed in connection with a reorganization plan implemented by the central office as the Director of the Department of Athletics, Physical Education,

Health and Community Services and retained that position through June 20, 1987.

In connection with the RIF implemented by the Board in March 1987, Mr. Fragale was notified that his position of Director of Athletic, Physical Education, Health and Safety had been eliminated and that he would be returning to a teaching position for the school year 1987–88. Following Mr. Fragale's receipt of a transfer letter, he requested a hearing before the Board pursuant to W.Va.Code § 18A–2–7 (Supp. 1990).[1] At the conclusion of this hearing, the Board concurred in the recommendation of the superintendent that Mr. Fragale be transferred from his administrative position and reassigned to a teaching position.

Mr. Fragale was reassigned as a physical education teacher for the South Harrison High School for the school year 1987–88. Maintaining that he was qualified to be the Director of Food Services, Director of Purchasing, Director of Transportation, and Director of the Budget, and that his seniority entitled him to occupy one of these positions, Mr. Fragale filed a grievance. On October 19, 1987, Hearing Examiner Keller denied Mr. Fragale's grievance. Mr. Fragale appealed the denial to the Circuit Court of Kanawha County. By final order entered on June 8, 1989, the circuit court affirmed the decision of the hearing examiner and ruled that Mr. Fragale was properly reassigned to a teaching position based on its finding that each director level position for which Mr. Fragale claimed that he was qualified is unique, requiring different qualifications and responsibilities, and that lateral bumping in this case was not required and was properly a decision left to the discretion of the administrative supervisory experts.

## KAREN BOWERS

Karen Bowers was first employed by the Board as a teacher in 1967. Ms. Bowers holds a masters degree in English and is certified as both an art teacher and an English teacher for grades seven through twelve. She is also certified as a supervisor in art administration.

In July 1979, Ms. Bowers left the classroom to take an administrative position at the Board's central office as Art Resources Specialist. In August 1983, Ms. Bowers was appointed Director of Continuing Education. She then served the Board in a multiple capacity continuing as the Coordinator of Art and Director of Staff Development in addition to being the Continuing Education Director.

In January 1987, the Board determined that it would be necessary to implement a RIF for the 1987–88 school year, which would apply to both central office staff and classroom teachers. Because of the RIF, the Board notified Ms. Bowers that her administrative position of Director of Continuing Education and Art Resources Specialist was to be eliminated and that she would be reassigned to a classroom teaching position within her fields of certification. Ms. Bowers was initially offered a full-time position as an art teacher at Bridgeport High School because she had more seniority in the art field of certification than the teacher then currently holding that position. She voluntarily chose not to accept the Bridgeport High School art teaching position and requested a different assignment.[2] Ms. Bowers was then assigned as an art teacher at Lumberport Middle School and at Salem Junior High School on a half-day basis in each school.

Based on her opinion that she should have been placed in one of the other specialized administrative positions at the central office given her overall teacher seniority compared to certain individuals occupying those specialized administrative positions, Ms. Bowers filed a grievance pursu-

1. West Virginia Code § 18A–2–7, which sets forth the powers of a superintendent to "assign, transfer, promote, demote or suspend school personnel," provides, in part, that: "[w]ithin ten days of the receipt of the statement of the reasons [for the proposed transfer], the teacher or employee may make written demand upon the superintendent for a hearing on the proposed transfer before the county board of education."

2. Ms. Bowers turned down the Bridgeport High School art teaching position because she did not want to displace the teacher then assigned to that position.

ant to W.Va.Code § 18–29–4 (1988).[3] Ms. Bowers contended that she should have been permitted to displace either the Director of Food Services, Director of Special Education, Director of Public Information and Communications, Administrative Assistant–Personnel or Middle Childhood Coordinator, grades 5–8. The Level I grievance was denied on May 26, 1987. Waiving Levels II and III of the grievance procedure, Ms. Bowers proceeded to Level IV by appealing her grievance to Hearing Examiner Sue Keller.

The hearing examiner rendered her decision on February 16, 1988, granting Ms. Bower's grievance in part, by directing the "Board to determine whether the Grievant is eligible for lateral transfer, and if so, to place her in the position held by the administrator with the least seniority." The hearing examiner attempted to justify the obvious disparity between the outcome in the *Bowers* grievance as contrasted to the *Fragale* grievance, by finding that "[because] the present grievant [Bowers] does not argue seniority as an administrator but relies on her overall seniority, *Fragale* is not controlling."[4] The Board then appealed the hearing examiner's decision to the Circuit Court of Harrison County, West Virginia. By final order entered on April 17, 1989, the circuit court affirmed the hearing examiner's decision and ordered the Board to proceed with the directions as stated in the February 16, 1988 decision.

\* \* \*

■ All the parties involved in these two cases agree that the issue to be resolved is one of statutory interpretation. The statute posing the interpretational problem is W.Va.Code § 18A–4–8b (1988). That statute provides, in pertinent part, as follows:

(a) The seniority of professional personnel shall be determined on the basis of the length of time the employee has been professionally employed by the county board of education.... Employment for a full employment term shall equal one year of seniority,....

....

Whenever a county board is required to reduce the number of professional personnel in its employment, the employee with the least amount of seniority shall be properly notified and released from employment pursuant to the provisions of section two, article two of this chapter: *Provided, That such employee shall be employed in any other professional position where he had previously been employed or to any lateral area for which he is certified and/or licensed if his seniority is greater than the seniority of any other employee in that area of certification and/or licensure.*

W.Va.Code § 18A–4–8b(a) (emphasis supplied).

We can easily dispense with the issue of whether a central office administrator qualifies as "professional personnel," thereby invoking the provisions of W.Va.Code § 18A–4–8b, by referring to the definitional section of Chapter 18A, Article 1. Under W.Va.Code § 18A–1–1(a) (1988), all "school personnel" are either professional or service personnel. "Professional personnel" are those individuals "who meet the certification and/or licensing requirements of the State, and shall include the professional educator and other professional employees." W.Va.Code § 18A–1–1(b). Among those employees categorized as a "professional educator" is the "central office administrator." W.Va.Code § 18A–1–1(c)(4). Since the central office administrator falls within the ambit of "professional personnel," the provisions of the RIF statute, W.Va.Code § 18A–4–8b, must be applied to this case.

The issue of whether the RIF statute applies to central office administrators and the issue of whether such administrators

---

3. West Virginia Code § 18–29–4 sets forth the four procedural levels of an education grievance and the procedures to be followed at each level.

4. Mr. Fragale strenuously objects to the hearing examiner's statement that he only relied on his seniority as an administrator (6 years) versus his overall seniority (13 years). He maintains that the briefs which he filed with the hearing examiner and with the circuit court both demonstrate that he did rely on his overall seniority throughout the grievance procedure.

accrue seniority as administrators, separate and distinct from their teaching seniority, have both previously been addressed in interpretations issued by the State Superintendent of Schools. In an interpretation dated October 6, 1986, the State Superintendent of Schools answered in the affirmative when questioned whether W.Va.Code § 18A–4–8b applies to a reduction in force which affects central office professional personnel. In an earlier interpretation dated February 25, 1985, the State Superintendent of Schools responded to the following inquiry which pertained to the accumulation of seniority as a central office administrator:

> *Question:* "What would be the teaching and administrative seniority of a person who taught six years, [then] was a principal for four years, and had been a central office administrator for six years [after that]?"
>
> *Response:* "This person's seniority ... *as a central office administrator would be nothing—unless he or she had been serving in a position which required a specific endorsement to the administrative certificate in addition to certification to teach in this state.* If this teacher/principal had been required to have an administrative certificate with a specific endorsement for the central office position held, then he or she would have six years of seniority as a supervisor of [the specific area he was supervising]. . . .

State Superintendent's Interpretation, February 25, 1985 (footnotes omitted and emphasis added).

▪ As this Court has previously stated in *Smith v. Bd. of Educ.*, 176 W.Va. 65, 341 S.E.2d 685 (1985), " '[i]nterpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous.' " *Id.* at Syl. Pt. 3 (quoting Syl. Pt. 4, *Security Nat'l Bank & Trust Co. v. First W.Va. Bancorp., Inc.*, 166 W.Va. 775, 277 S.E.2d 613 (1981), *appeal dismissed*, 454 U.S. 1131, 102 S.Ct. 986, 71 L.Ed.2d 284 (1982)). The state superintendent is clearly "charged by statute with the authority to interpret the laws and regulations pertaining to schools." *Smith*, 176 W.Va. at 70, 341 S.E.2d at 689 (citing

W.Va.Code § 18–3–6 (1984 Repl. Vol)). We find no reason to disagree with the superintendent's interpretation that central office administrators do not accrue seniority while occupying such administrative positions that is separate and distinct from their overall seniority as professional personnel unless an administrative certificate with a specific endorsement is required for the specific central office position being held.

▪ Neither administrative position held respectively by Ms. Bowers and Mr. Fragale required an administrative certificate with a specific endorsement as a prerequisite to obtaining the position. Accordingly, neither of these two administrators accrued any seniority, separate and distinct from their overall seniority as professional personnel, while occupying their central office positions. Moreover, the portion of the proviso in W.Va.Code § 18A–4–8b(a) which permits "bumping" into a "lateral area for which he is certified and/or licensed if his seniority is greater than the seniority of any other employee in that area of certification and/or licensure" does not apply to either of their cases because none of the alternate administrative positions which they respectively sought required certification or licensure. Accordingly, the remaining proviso language makes it clear that Ms. Bowers and Mr. Fragale could only be transferred "to any other professional position where he [or she] had previously been employed." W.Va.Code § 18A–4–8b(a). This is exactly what the Board did when it utilized their respective overall seniority as professional personnel and assigned Ms. Bowers and Mr. Fragale to classroom teaching positions in their specialized areas of certification.

▪ In a previous case where a school administrator challenged his return to the classroom, this Court recognized that the administrator "was not employed in any tenured classification except as a teacher, covered by his teacher's contract." *Trimboli v. Board of Educ.*, 163 W.Va. 1, 7, 254 S.E.2d 561, 564 (1979). While *Trimboli* did not involve a RIF, it did discuss the discretionary nature of employment in an admin-

istrative position. Interpreting W.Va.Code § 18–5–32 (1958),[5] we stated that an administrator "could be demoted, promoted, or transferred at the whim of the board upon recommendation of the superintendent...." 163 W.Va. at 8, 254 S.E.2d at 565 (footnote omitted). As this Court acknowledged in *Trimboli,* an administrator does not have a right to continue holding an administrative position indefinitely. If, through an RIF or the discretion of the Board, a decision to eliminate an administrative position or to remove an administrator is made, the administrator must return to the classroom unless she meets the requirements set forth in W.Va.Code § 18A–4–8b(a) which enable her to laterally "bump" another administrator.

■ We are not convinced by the arguments raised by Ms. Bowers and Mr. Fragale that the rationale of this Court's holding in *Dillon v. Board of Educ.,* 177 W.Va. 145, 351 S.E.2d 58 (1986) should be extended to apply to administrators. In *Dillon* we interpreted 1983 amendments to W.Va. Code § 18A–4–8b concerning seniority:[6]

By the addition of the language in question regarding teacher promotions and vacancies, the legislature must have intended seniority to play some role in the selection process.

. . . .

After a careful reading of W.Va.Code, 18A–4–8b (1983), we conclude that the legislature must have intended seniority to be the determinative factor when the applicants for a promotion or a vacant teaching position are otherwise so sim-

ilarly qualified as to make a rational choice among the candidates impossible.... [W]here several applicants have the same or similar qualifications, there is no rational basis for selecting one applicant over the others except seniority. In such circumstances, the statute, in effect, establishes a presumption that the applicant with the most seniority is more qualified.

177 W.Va. at 148–149, 351 S.E.2d at 61–62 (footnote omitted).

Although this Court ruled in *Dillon* that the Legislature "must have intended seniority to be the determinative factor when the applicants for a promotion or a vacant teaching position are otherwise so similarly qualified as to make a rational choice among the candidates impossible," there are fundamental reasons why this rule cannot be applied to permit administrative "bumping." *Id.* at 62. First and foremost, is the obvious fact that *Dillon* did not address the use of seniority in the instance of a transfer necessitated by a RIF. Because a RIF transfer was not involved in *Dillon,* the proviso language found in W.Va.Code § 18A–4–8b that posed the interpretational issue at the core of this case was not addressed in *Dillon.* Accordingly, the argument that *Dillon* should be extended to this case, which clearly involves interpretation of a separate, distinct statutory provision, is without merit.

In addition to the fact that this case and *Dillon* present glaringly distinct issues of statutory interpretation, there is yet another reason why seniority cannot be applied to administrative transfers in the same manner that it can be utilized for classroom

---

5. West Virginia Code § 18–5–32 provides, in relevant part:

The board [of education], upon the recommendation of the county superintendent, shall have authority to employ such general and special supervisors or directors of instruction and of such other educational activities as may be deemed necessary.

... The period of employment for all others named herein shall be at the discretion of the board.

. . . .

Any person employed under the foregoing provision of this section, provided he holds a valid teacher's certificate, shall be given continuing contract status as a teacher and shall

hold such status unless dismissed for statutory reasons.

6. The 1983 amendments to W.Va.Code § 18A–4–8b made teacher promotions and vacancies subject to seniority rights. The amended statutory language provides as follows:

A county board of education shall make decisions affecting promotion and filling of any classroom teacher's position occurring on the basis of qualifications. If the applicant with the most seniority is not selected for the position a written statement of reasons shall be given to the applicant with the most seniority with suggestions for improving the applicant's qualifications.

W.Va.Code § 18A–4–8b(a).

teacher promotions or vacancies. Because a teacher must be certified before he or she is permitted to instruct students in a given area of education, teachers applying for a promotion or vacant classroom position will necessarily have the requisite certification to teach in that area. Administrators such as Ms. Bowers and Mr. Fragale, however, are not certified to hold the alternate administrative positions which they seek. We recognize that there is no certification required for those alternate positions, but it is this very fact that caused the Legislature to conclude that transfers which would result in "bumping" would be inappropriate where certification or licensure is not a prerequisite for obtaining the position.

Seniority still plays a role when an administrator loses his or her job due to a RIF. But the Legislature has made it clear that seniority will only permit the transfer of a professional personnel "to any lateral area for which he is certified and/or licensed." W.Va.Code § 18A–4–8b. As discussed above, the alternate administrative positions which Ms. Bowers and Mr. Fragale sought required no certification or licensure. Accordingly, under the express language of the RIF proviso, they were not entitled to use their seniority to "bump" their fellow administrators.

■ We agree with the Circuit Court's conclusion in the *Fragale* appeal that each director position which Mr. Fragale claimed he was qualified to hold is unique in that it requires different qualifications and responsibilities and further that the decision of who should hold these other administrative positions should be left to the discretion of those with the administrative responsibility of supervising the school system. The simple fact is that the central office director positions are not interchangeable. Notwithstanding the fact that Ms. Bowers and Mr. Fragale may possess the qualifications to apply for the alternate administrative positions, this does not mean that they are necessarily the best qualified individuals to hold any of these other administrative positions. It stands to reason that the individuals who continue to occupy the specialized administrative directorships which Ms. Bowers and Mr. Fragale argue they should hold, by virtue of their experience through occupying those positions and fulfilling the duties associated with those positions, may be better qualified to continue in those positions. Furthermore, those charged with the ultimate responsibility of supervising the system are entitled to consider other factors in addition to seniority in determining who they can repose their confidence in to administer the school system. The displacement advocated by Ms. Bowers and Mr. Fragale would clearly cause major disruption in the ability of the central office to effectively administer the school system. We conclude that the Legislature fully comprehended the disruption that would result and that is why professional personnel such as administrators are not entitled to "bump" into another administrative position unless they are certified or licensed to hold that position.

■ Finally, it is important to recognize that a teacher who takes an administrative position and then loses the position due to a RIF does not lose any of the seniority rights that she would have accumulated had she remained in a teaching position. As a "professional personnel," her seniority is calculated "on the basis of the length of time the employee has been professionally employed by the county board of education." W.Va.Code § 18A–4–8b(a). Thus, as administrators holding positions for which no certification or licensure was required, both Ms. Bowers and Mr. Fragale continued to accrue years of seniority which enabled them to secure teaching positions in their fields of certification commensurate with their years of seniority upon their return to the classroom.

■ The implementation of a reduction in force necessarily results in the elimination of both administrative and classroom teacher positions. Consequently, no decision by this Court can preserve or protect these professional positions. Our task is merely to clarify or interpret the method that has been established by law to effectuate such reductions in force. Accordingly, we hereby hold that, barring certification

or licensure *and* seniority which would permit bumping into a lateral administrative position, an administrator subject to a RIF transfer must return to the classroom. *See* W.Va.Code § 18A–4–8b(a). Obviously, the administrator may have to take a pay cut, but he will not be penalized in any way for having served his county board of education as an administrator because he will enjoy all the seniority rights that he would have accrued had he chosen to remain in the classroom.

Based on the foregoing, we hereby reverse the decision of the Circuit Court of Harrison County as to Ms. Bowers and we affirm the decision of the Circuit Court of Kanawha County as to Mr. Fragale.

Reversed; Affirmed.