425 S.E.2d 251

STATE of West Virginia, ex rel. Jeanne V. MELCHIORI Petitioner Below, Appellee,

v.

The BOARD OF EDUCATION of The COUNTY of MARSHALL, Respondent Below, Appellant.

No. 21115.

Supreme Court of Appeals of West Virginia.

Submitted Sept. 8, 1992.

Decided Dec. 18, 1992.

Jolyon W. McCamic, McCamic & McCamic, Wheeling, for appellee.

Howard E. Seufer, Jr., Bowles, Rice, McDavid, Graff & Love, Charleston, for appellant.

WORKMAN, Justice:

The Marshall County Board of Education ("Board") appeals from a decision of the Circuit Court of Marshall County holding that Jeanne Melchiori, Appellee, could not be transferred as the result of a reduction in force to a teaching position for which she was certified but had never been employed to teach. Our examination of the reduction in force statute, West Virginia Code § 18A–4–7a (Supp.1992), compels us to conclude that county boards of education should consider the amount of teaching experience the employee has in a particular field prior to making reassignments. Because there is no evidence that the Board's decision to place Appellee in a teaching position for which she was certified but had never taught was sound, this case is reversed and remanded with directions to the Board to reconsider its decision pursuant to the guidelines outlined in this opinion.

When the Board evaluated its workforce in the spring of 1991 for the purpose of implementing a reduction of its workforce, thirty-five teaching positions were targeted to be eliminated due to declining student enrollment and a concomitant reduction in state aid. The reduction plan included the elimination of one of seven physical education teaching positions at Moundsville Junior High School. Since Appellee had less seniority than any other physical education teacher at the school, her teaching position was eliminated. Due to her displacement, she was offered a position as a mental retardation teacher. The parties do not dispute that Appellee was properly identified as the physical education teacher whose position should be eliminated as part of the reduction in force,[1] nor is there any question raised regarding the calculation of her seniority. What is at issue in this case is construction of the reduction in force statute, West Virginia Code § 18A–4–7a, as it relates to reassignment of an employee whose teaching position has been eliminated.

The reduction in force statute presents two alternatives for a county board faced with reassignment of a teacher:

Whenever a county board is required to reduce the number of professional personnel in its employment, the employee with the least amount of seniority shall be properly notified and released from employment pursuant to the provisions of section two, article two [§ 18A–2–2] of this chapter: ... Provided, however, That an employee subject to release shall be employed in any other professional position where such employee is certified and was previously employed or to any lateral area for which such employee is certified and/or licensed, if such employee's seniority is greater than the seniority of any other employee in that area of certification and/or licensure.

W.Va.Code § 18A–4–7a. The teacher at issue in this case is certified to instruct physical education for grades one through twelve and mental retardation for grades kindergarten through twelve. Despite her dual certification, however, Appellee has taught only physical education in her thirteen years of teaching.

In making its decision to reassign Appellee, the Board relied upon the following interpretation by the State Superintendent of Schools ("Superintendent") dated February 22, 1988, which opines that:

[i]f a professional whose position is going to be eliminated has certification in more than one area, he or she has a right to displace, or 'bump,' only the least senior employee serving in all of the certificate areas possessed by the displacing employee. For example, a 'bumping' employee who has three certificates may only displace the one employee in the county who is the most junior of all the employees serving in the three areas of certification.

Consistent with this interpretation, the Board considered all the county employees in the two areas in which Appellee was

---

**1.** No argument is made that the analysis of seniority should have been done on a county-wide basis, as opposed to a single school basis, so we do not address that issue at this time.

certified and identified the most junior of those employees to be a mental retardation teacher. Consequently, the Board offered this mental retardation position to Appellee.

Appellee initially argued that she should have been given a choice of any of the six physical education and six mental retardation positions held by less senior teachers. The circuit court rejected Appellee's contention that she had the right to choose which teacher to "bump" but found that

> The statute in this case mandates that the released employee be employed in any other professional position *where he had previously been employed* ... if his seniority is greater, etc.

> In this case, the petitioner [appellee] had not previously been employed as a teacher in mental retardation. (Admittedly, she was certified but not employed).

> Therefore, the Board should have placed her in the position of the least senior teacher in the field of physical education within the county system.

> . . . .

> The language of the statute clearly indicates that a pre-requisite to a lateral placement is prior employment in that position.

Based on its conclusion that prior employment in a field of certification is a prerequisite to a lateral transfer combined with the fact that Appellee had never been employed to instruct mental retardation, the circuit court ordered that Appellee be given the teaching position held by the least senior physical education teacher within the county school system. The circuit court's ruling that West Virginia Code § 18A–4–7a prohibits a county board of education from assigning a displaced teacher to a field in which the teacher is certified but has never been employed to teach prompted the Board's appeal to this Court.

■ Referencing the two alternatives provided by West Virginia Code § 18A–4–7a for reassignment of a displaced teacher, the Board observes that the circuit court "without explanation, simply dropped the second of the two statutory alternatives

from consideration." We agree with the Board that the circuit court's ruling omits consideration of the alternative to transfer a displaced teacher "to any lateral area for which such employee is certified and/or licensed, if such employee's seniority is greater...." W.Va.Code § 18A–4–7a. When educational personnel lose their positions due to a reduction in force, both of the alternatives for reassignment provided in West Virginia Code § 18A–4–7a should be considered in conjunction with the reassignment decision. The circuit court clearly erred in its application of the reduction in force statute in failing to consider the second alternative for reassigning Appellee provided by West Virginia Code § 18A–4–7a.

■ In addition to a reversal of the circuit court's order, the Board seeks clarification of how teachers subject to a reduction in force are to be reassigned in view of the statutory alternatives. While the Board maintains that the State Superintendent of Schools has repeatedly interpreted the reduction in force statute to require a county board of education to consider both of the alternatives listed in West Virginia Code § 18A–4–7a when reassigning a teacher, the "bumping" policy promulgated by the Superintendent demonstrates the fallacy of this contention. Application of the Superintendent's policy permits a displaced teacher to " 'bump,' only the least senior employee serving in all of the certificate areas possessed by the displacing employee." In the case of any teacher who is certified in multiple fields, this policy effectively nullifies the Board's discretion to choose between the statutory alternatives for reassignment. To illustrate, because Appellee was certified in an alternate area, the bumping policy which requires that seniority be viewed in terms of all Appellee's areas of certification prevented the Board from relying on the first alternative under the reduction in force statute (i.e. placement in another physical education position).

This case demonstrates how adherence to the reduction in force policy advocated by the Superintendent usurps the discretion

that was legislatively imposed on county boards of education. This preemptive effect of the bumping policy, insofar as it arguably eliminates the exercise of discretion reposed by the Legislature in the county board, causes concern about the manner in which the reduction in force statute is being applied.

Appellee charges that reassignment of displaced teachers is being accomplished in a non-discretionary, mechanical fashion. Specifically, Appellee complains that the Board merely identifies the teacher with the least amount of seniority and the displaced teacher is given that particular position regardless of her actual qualifications. This selection process, according to Appellee, is inconsistent with this Court's statements in *Dillon v. Board of Education*, 177 W.Va. 145, 351 S.E.2d 58 (1986). In that decision, we examined the predecessor statute to 18A–4–7a (W.Va.Code § 18A–4–8b (1983)) in resolving the roles that qualifications and seniority play in the filling of vacant teacher positions and noted that:

> [a]lthough we have not had occasion to consider this provision, it is evident that the statute's [W.Va.Code § 18A–4–8b(a) ] emphasis on the qualifications of applicants is in furtherance of the strong public policy favoring the hiring and advancement of teachers based on their abilities. Public education is a fundamental constitutional right in this State, and a prime function of the State government is to develop a high quality educational system, an integral part of which is qualified instructional personnel.... '[T]he State has a legitimate interest in the quality, integrity and efficiency of its public schools in furtherance of which it is not only the responsibility but also the duty of school administrators to screen those [in] ... the teaching profession to see that they meet this standard.' *James v. West Virginia Board of Regents*, 322 F.Supp. 217, 229 (S.D.W.Va.), *aff'd*, 448 F.2d 785 (4th Cir. 1971).

177 W.Va. at 148, 351 S.E.2d at 61 (some citations omitted).

We have only addressed the proviso language of the reduction in force statute at issue here on two other occasions. In *State ex rel. Board of Education v. Casey*, 176 W.Va. 733, 349 S.E.2d 436 (1986), we held that a county board of education had "a nondiscretionary duty to notify and release from employment ... the secondary principal with the least amount of seniority, and to place in such secondary principalship the principal whose school is to be closed." *Id.* at 737, 349 S.E.2d at 440. That decision is of little assistance, however, because the reduction in force decision at issue in *Casey* involved "a distinct classification of professional educational personnel, secondary principalships," unlike the instant case where the reassignment quandary involves a teacher with multiple certifications. *Id. Casey*'s only import to the case at bar is its recognition of "the clear legislative intent that reductions in force of professional educational personnel be conducted on the basis of seniority...." *Id.* The only other case which deals with the relevant statutory language is *Board of Education v. Bowers*, 183 W.Va. 399, 396 S.E.2d 166 (1990). That decision is equally inapplicable, however, because the issue there was whether central office administrators accrue seniority separate and distinct from their overall seniority as professional personnel.

Resolution of this issue of first impression requires careful statutory scrutiny to determine whether seniority alone is the only factor to be considered when reassigning a teacher whose job has been eliminated due to a reduction in force. Following this Court's lead in *Dillon*, the Legislature amended the reduction in force statute to reflect an emphasis on qualifications in hiring decisions. With the most recent amendments enacted in 1992, West Virginia Code § 18A–4–7a begins:

> A county board of education shall make decisions affecting the hiring of professional personnel other than classroom teachers on the basis of the applicant with the highest qualifications. Further, *the county board shall make decisions affecting the hiring of new classroom teachers on the basis of the*

*applicant with the highest qualifications. In judging qualifications, consideration shall be given to each of the following:* Appropriate certification and/or licensure; *amount of experience relevant to the position or, in the case of a classroom teaching position, the amount of teaching experience in the subject area;* the amount of course work and/or degree level in the relevant field and degree level generally; academic achievement; relevant specialized training; past performance evaluations ...; and other measures or indicators upon which the relative qualifications of the applicant may fairly be judged.

W.Va.Code § 18A–4–7a (Supp.1992) (emphasis supplied).[2]

The undeniable emphasis on qualifications with regard to the hiring of new classroom teachers, as well as other professional personnel, demonstrates that the legislative intent in amending West Virginia Code § 18A–4–7a is both clear and consistent with our recognition in *Dillon* that "a prime function of the State government is to develop a high quality educational system, an integral part of which is qualified instructional personnel." 177 W.Va. at 148, 351 S.E.2d at 61. Given this laudable objective of filling our schools with qualified instructors, we cannot fail to note that the placement of Appellee in a mental retardation teaching position does not comport with this goal. While we recognize, as Appellant stresses, that Appellee's certification in mental retardation is certainly an indication that she has met the established instructional requirements for this particular subject area, certification should not be the only factor examined in reassigning Appellee to a classroom teaching position. If she were being hired to fill a vacant teaching position, her years of experience as a physical education teacher would certainly point toward placement in a physical education slot rather than a mental retardation opening. Yet, compliance with the policy promulgated by the Superintendent results in a figurative tying of the Board's

hands such that they cannot place Appellee in a physical education position.

■ We recognized in *Bowers* that "'[i]nterpretations of statutes by bodies charged with their administration are given great weight unless clearly erroneous.'" 183 W.Va. at 404, 396 S.E.2d at 171 (quoting Syl.Pt. 3, *Smith v. Board of Educ.,* 176 W.Va. 65, 341 S.E.2d 685 (1985)). Similarly, this Court has ruled that "[c]ounty boards of education have substantial discretion in matters relating to the hiring, assignment, transfer, and promotion of school personnel. Nevertheless, this discretion must be exercised reasonably, in the best interests of the schools, and in a manner which is not arbitrary and capricious." *Dillon,* 177 W.Va. at 146, 351 S.E.2d at 59, Syl.Pt. 3. Although the procedure recommended by the Superintendent is obviously appealing to the school boards because it provides a clean and easy method by which to effect a reduction in force, it does not permit the county boards to fully address the issue of replacement with due consideration not only to the rights attendant to seniority, but also to the needs of the system in fulfilling its mandate to provide the best education possible to its students. While we do not find the "bumping" policy interpretation of West Virginia Code § 18A–4–7a to be clearly erroneous, we do rule that compliance with the reasonable discretion standard articulated in *Dillon* requires a county board of education to do more when reassigning a displaced teacher than to identify the teacher with the least amount of seniority after considering all the certificate areas of the displaced teacher.

Recognizing that the statutory emphasis on qualification found in West Virginia Code 18A–4–7a pertains to hiring, we nonetheless find it unacceptable to disregard qualification, specifically classroom teaching experience, when reassigning a teacher displaced due to a reduction in force. We do not mean to suggest that the role which seniority plays with regard to reassign-

**2.** Prior to *Dillon,* the only statutory reference to qualification was the statement that "decisions affecting promotion and filling of any class-

room teacher's position" shall be made "on the basis of qualifications." W.Va.Code § 18A–4–8b (Supp.1983).

ment is unimportant or that seniority be ignored. *See* W.Va.Code § 18A–4–7a. Simply stated, the Superintendent's "bumping" policy which mandates the forced bumping of the teacher with the least amount of seniority in view of *all* of a displaced teacher's areas of certification does not appear to be a sound policy when scrutinized against the objective of filling classrooms with the most qualified instructors. An objective observer would have to conclude that Appellee is probably more qualified to instruct physical education given her thirteen years of experience in that field than she is to teach in the field of mental retardation.

This Court has a duty to oversee that the objective of filling this State's schools with "qualified instructional personnel" is met. *Dillon*, 177 W.Va. at 148, 351 S.E.2d at 61. Since the Legislature has defined "qualified" partially in terms of teaching experience, it seems only logical that the years of teaching in a given subject area should be considered by a board of education when making a reassignment decision. Accordingly, we hold that a country board of education must give weight to the years of teaching experience a displaced employee has in given subject areas when making a decision to reassign the teacher pursuant to West Virginia Code § 18A–4–7a.

This Court is not unmindful of the effects that a reassignment policy which takes qualifications into consideration rather than seniority alone can create. The domino effect of placing Appellee in a physical education position appears to be the primary objection the Board has with introducing qualifications into the reassignment process. That additional reassignments may occur once qualifications enter into reassignment decisions and that this will necessarily cause more headaches to various boards of education faced with these decisions is certainly a possibility. The alternative, however, is to subject this State's students to instructors who are arguably not as qualified to teach in a given area due to a lack of classroom teaching experience. Reductions in force are always difficult and there is no flawless system for making them, which makes all the more crucial that those making decisions in this context use their thought processes rather than some simplistic mechanical approach.

■ We do not attempt through this opinion to annihilate the Board's "bumping" policy. Instead, we wish to inject into the reassignment process appropriate consideration of a teacher's qualification for a position in terms of her classroom experience. Accordingly, we require that a county board of education make a showing that its assignment of a displaced teacher is sound when the teacher is assigned to instruct in an area for which she is certified but has not been employed to teach, where an alternative assignment in an area in which the teacher has previously been employed to teach was available under the seniority framework. If the Board has sound reasons for adhering to its current policy in a given case, these reasons can be considered in determining whether the reassignment decision complies with the standard established in *Dillon* which requires the exercise of reasonable discretion and forbids arbitrary and capricious decisions. *See* 177 W.Va. at 146, 351 S.E.2d at 59, Syl.Pt. 3.

Based on the foregoing, the decision of the Circuit Court of Marshall County is reversed and remanded to the Board for reconsideration of its placement of Appellee in view of this opinion.

Reversed and remanded.