490 S.E.2d 306

**Billy J. KEATLEY, Grievant Below, Appellant,**

v.

**MERCER COUNTY BOARD OF EDUCATION, Respondent Below, Appellee.**

No. 23844.

Supreme Court of Appeals of West Virginia.

Submitted April 23, 1997.

Decided June 19, 1997.

J.W. Barringer, Stone, Feuchtenberger & Barringer, Princeton, for Appellant.

Kathryn Reed Bayless, Bayless & McFadden, Princeton, for Appellee.

DAVIS, Justice:

This appeal arises from a final order of the Circuit Court of Mercer County which affirmed a decision of an administrative law judge (hereinafter "ALJ") of the West Virginia Educational Employees Grievance Board. The circuit court affirmed the ALJ's decision that the Mercer County Board of Education (hereinafter the "Board"), appellee/respondent below was correct in denying Mr. Billy J. Keatley, appellant/grievant below, the position of assistant principal. In this appeal Mr. Keatley argues that the circuit court committed error in finding that: (1) the person hired for the assistant principal position met the qualifications for the position, and (2) the Board's method of scoring the "experience" criterion for the position was not arbitrary.

## I.

## FACTS

The facts of this case begin with the Board's June 9, 1994, public notice seeking applications for the position of assistant principal at PikeView High School. Mr. Keatley and Mr. Ben Disibbio were two of the ten applicants vying for the position.

At the time Mr. Keatley and Mr. Disibbio applied for the position of assistant principal, their respective qualifications were as follows. Mr. Keatley had twenty-six years of experience as a professional educator. Twelve of those years were spent as an assistant principal in two high schools and one junior high school. Mr. Keatley had experience as an acting principal on one occasion for an undisclosed period of time. He also had a Professional Administrative Certificate (hereinafter "Certificate").[1]

Mr. Disibbio had one year of experience as an assistant principal, although he did not have a Certificate at the time he obtained his assistant principal experience.[2] In fact, the record is clear that at the time Mr. Disibbio interviewed for the position in this case he did not have a Certificate. The record indicates Mr. Disibbio had only an administrative internship license.

The Board had in place a formalized scoring system. The Board's scoring system consisted of a total of 95 points. The points were divided for evaluation purposes into three categories. Fifteen points were allocated for three written questions; 50 points were allocated for ten oral questions;[3] and 30 points were allocated for the first six statutory criteria set forth in W.Va.Code § 18A–4–7a (1993). The Board ranked the

---

1. The Certificate is required for holding the position of an assistant principal.

2. Mr. Disibbio's one year tenure as an assistant principal was the subject of a separate administrative grievance in *Shewbridge v. Mercer County Board of Education,* No. 94–27–094 (9/28/94). An applicant for the assistant principal position held by Mr. Disibbio challenged his qualifications for the job. The ALJ in that case ruled that Mr.

Disibbio was wrongfully given the position, in that he did not have a Certificate. The ALJ ordered Mr. Disibbio be removed from the position and replaced by the grievant in that case. The ALJ's decision was never appealed.

3. The written and oral questions represent the seventh and last criterion of W.Va.Code § 18A–4–7a, *i.e.,* "other measures or indicators."

ten applicants in descending order based upon their total scores, *i.e.*, the highest score was ranked 10th and the lowest score was ranked 1st.

Mr. Keatley ranked 7th with a total of 77 points. Mr. Disibbio ranked 9th with a total of 83 points.[4] The individual who ranked the highest declined the position and took another job. On July 26, 1994, the Board voted to award the position to Mr. Disibbio.

Mr. Keatley filed an administrative grievance as a result of the job being awarded to Mr. Disibbio. Mr. Keatley contended that under the statutory criteria set forth in W.Va.Code § 18A–4–7a an applicant must have a Certificate. Mr. Keatley alleged that at the time the Board voted to award Mr. Disibbio the position, Mr. Disibbio did not have a Certificate and, therefore, should not have been awarded the position. Further, Mr. Keatley argued that the Board erroneously gave to Mr. Disibbio an equal number of "experience" points, even though Mr. Keatley had eleven years more experience as an assistant principal than did Mr. Disibbio.

The ALJ denied Mr. Keatley's grievance. The evidence presented before the ALJ revealed that Mr. Disibbio received a Certificate on September 1, 1994. The ALJ found that Mr. Disibbio received the Certificate before the commencement of the 1994–1995 school year. Therefore, the ALJ concluded that Mr. Disibbio was qualified to hold the position. The ALJ also concluded the Board was not arbitrary in its allocation of points for experience.

Mr. Keatley appealed the decision of the ALJ to the circuit court. On March 22, 1996, the circuit court issued an order denying the appeal and affirming the ALJ's decision. This appeal followed. The issues presented to this Court by the appeal are whether the circuit court committed error in finding (1) that Mr. Disibbio did not have to possess a Certificate at the time he was hired to fill the position of assistant principal, and (2) that the Board's method of scoring the "experience" criterion for the position was not arbitrary.

## II.

## STANDARD OF REVIEW

■ The standard of review of the ALJ's final order was articulated by this Court in syllabus point 1 of *Randolph County Board of Education v. Scalia,* 182 W.Va. 289, 387 S.E.2d 524 (1989):

A final order of the hearing examiner for the West Virginia Educational Employees Grievance Board, made pursuant to W.Va. Code, 18–29–1, et seq. [1994], and based upon findings of fact, should not be reversed unless clearly wrong.

It is provided in W.Va.Code § 18–29–7 (1994) that an ALJ's decision may be set aside if it is arbitrary, capricious, an abuse of discretion, or contrary to law. *Board of Education of the County of Mercer v. Wirt,* 192 W.Va. 568, 453 S.E.2d 402 (1994). We elaborated on the standard of review in *Martin v. Randolph County Bd. of Educ.,* 195 W.Va. 297, 304, 465 S.E.2d 399, 406 (1995), where we said:

The scope of review under the arbitrary and capricious standard is narrow, and a court is not to substitute its judgment for that of the hearing examiner.... Similarly, in reviewing an ALJ's decision that was affirmed by the circuit court, this Court accords deference to the findings of fact made below. This Court reviews decisions of the circuit [court] under the same standard as that by which the circuit [court] reviews the decision of the ALJ. We must uphold any of the ALJ's factual findings that are supported by substantial evidence, and we owe substantial deference to inferences drawn from these facts. Further, the ALJ's credibility determinations are binding unless patently without basis in the record. Nonetheless, this Court must determine whether the ALJ's findings were reasoned, i.e., whether he or she considered the relevant factors and explained the facts and policy concerns on which he or she relied, and whether those facts have some basis in the record. We review de novo the conclusions of law and application of law to the facts. (Citations omitted.)

---

4. The record does not disclose the identity of the person who ranked 8th in scoring.

By utilizing the standard of review outlined above, we address separately the issues presented by this case.

## III.

## DISCUSSION

### A.

### Did Mr. Disibbio Need A Certificate Prior To Being Hired?

We are first asked to examine the language of a specific provision in W. Va.Code 18A–4–7a, to determine whether Mr. Disibbio met the statutory certification requirement to be awarded the position of assistant principal. W.Va.Code § 18A–4–7a provides that in judging qualifications of professional personnel other than teachers, the county board of education shall give consideration to the following factors:

*Appropriate certification* and/or licensure; amount of experience relevant to the position ...; the amount of course work and/or degree level in the relevant field and degree level generally; academic achievement; relevant specialized training; past performance evaluations ... and other measures or indicators upon which the relative qualifications of the applicant may fairly be judged. (Emphasis added.) [5]

*See Jones v. Monroe County Bd. of Educ.*, 190 W.Va. 646, 648, 441 S.E.2d 367, 369, n. 1 (1994).

■ Initially, our analysis requires a determination of what is meant by the phrase "Appropriate certification." Of course, "[i]nterpreting a statute ... presents a purely legal question" for the Court. *Mildred L.M. v. John O.F.*, 192 W.Va. 345, 350, 452 S.E.2d 436, 441 (1994). This Court has previously "recognized that generally the words of a statute are to be given their ordinary and familiar significance and meaning[.]" *Metropolitan Property and Liability Ins. Co. v. Acord*, 195 W.Va. 444, 450, 465 S.E.2d 901, 907 (1995) (citation omitted). On a pure question of statutory construction, we must determine legislative intent using traditional tools of statutory construction. Syl. Pt. 11, *Cox v. Amick*, 195 W.Va. 608, 466 S.E.2d 459 (1995). "In ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation." *State ex rel. Morgan v. Trent*, 195 W.Va. 257, 263, 465 S.E.2d 257, 263 (1995) (citations omitted). In examining statutory language generally, words are given their common usage and "[c]ourts are not free to read into the language what is not there, but rather should apply the statute as written." *State ex rel. Frazier v. Meadows*, 193 W.Va. 20, 24, 454 S.E.2d 65, 69 (1994).

■ The provision cited from W.Va. Code § 18A–4–7a does not establish the deadline by which an applicant must possess the appropriate certification.[6] The absence of such a reference clearly indicates legislative intent for county boards of education to exercise discretion on this issue. "[I]f the statute is silent ... with respect to the specific issue, the question for the court is whether the [Board's] answer is based on a permissible construction of the statute." *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 843, 104 S.Ct. 2778, 2782, 81 L.Ed.2d 694, 703 (1984). *See Pauley v. BethEnergy Mines, Inc.*, 501 U.S. 680, 696–98, 111 S.Ct. 2524, 2534, 115 L.Ed.2d 604, 623–25 (1991). Therefore, we review the Board's decision, only to determine if the Board's statutory construction is

**5.** In this case, the official notice regarding the position of assistant principal stated:

Minimum Qualifications: A valid West Virginia Administrative Certificate. Candidate should have records of excellent work attendance, outstanding evaluations; evidence of performing extracurricular duties, positive attitude, concrete personal contributions and/or desire in addressing academic goals; excellent oral and written communication skills and demonstrates concern for addressing community concerns; candidate should have experience or knowledge in student scheduling.

**6.** " 'Inclusio unius est exclusio alterius,' the expression that 'one is the exclusion of the others,' has force in this case. This doctrine informs courts to exclude from operation those items not included in the list of elements that are given effect expressly by statutory language." *State ex rel. Roy Allen S. v. Stone*, 196 W.Va. 624, 630 n. 11, 474 S.E.2d 554, 560 n. 11 (1996).

one the legislature would have sanctioned.[7] *See United States v. Shimer*, 367 U.S. 374, 383, 81 S.Ct. 1554, 1560–61, 6 L.Ed.2d 908, 915 (1961).

This Court noted in syllabus point 3 of *Dillon v. Board of Educ. of Wyoming County*, 177 W.Va. 145, 351 S.E.2d 58 (1986) that "[c]ounty boards of education have substantial discretion in matters relating to the hiring, assignment, transfer, and promotion of school personnel. Nevertheless, this discretion must be exercised reasonably, in the best interests of the schools, and in a manner which is not arbitrary and capricious." In the matter *sub judice* the ALJ found that Mr. Disibbio did not possess a Certificate until after he was actually hired by the Board.[8] However, the ALJ also found that Mr. Disibbio did, in fact, obtain the requisite Certificate before the school year began.[9] The Board urges this Court to adopt the interpretation by the ALJ, that W.Va.Code § 18A–4–7a permits the Board to interview and hire professional personnel who do not physically possess a Certificate until shortly before assuming their duties. Mr. Keatley contends that the statute requires actual possession of a Certificate before an applicant is deemed eligible to interview for the position.

We are reluctant to disturb the legal conclusion of the ALJ. We believe that the statute's certification requirement should not be read so narrowly as to exclude from the hiring process, individuals who have completed all necessary requirements for a Certificate, but do not have the actual physical possession of such Certificate at the time of the interview or during the hiring stage. *See* Syl. Pt. 1, *Jones*, in part ("Under W.Va.Code 18A–4–7a [1990], in hiring an assistant superintendent of schools for curriculum and instruction, … the date that respective doctorates were awarded [does not] create any order of precedence among competing candidates."); *Whitley v. Canton City School District*, 38 Ohio St.3d 300, 528 N.E.2d 167 (1988) (date courses completed for certification to teach is controlling, not the date of receipt of certificate); *Board of Educ. Of Taos Municipal Schools v. Singleton*, 103 N.M. 722, 712 P.2d 1384 (1985) (delay in issuance of recertification did not give grounds to fire teacher when all required work for recertification was completed); *Butcher v. Board of Educ. Of Island Trees Union Free School District*, 99 Misc.2d 470, 416 N.Y.S.2d 486 (1979) (finding a teacher was certified on date school began even though certification was not received until a month after school term started).

Mr. Keatley contends that the Board's position would cause wasteful spending in situations where hired professional personnel ultimately fail to obtain the requisite Certificate. The net effect of such situations would require the interview process to again commence. We are not persuaded by this argument. There are many instances where private and public employers fill positions requiring certification or a license, with individuals who have completed the necessary requirements for certification or a license, but do not physically possess the same when hired.[10] It is true that, for one reason

---

**7.** The plain meaning of a statute is normally controlling, except in the rare case in which literal application of a statute will produce a result demonstrably at odds with the intentions of the drafters. In such case, it is the legislative intent, rather than the strict language, that controls. *West Virginia Human Rights Com'n v. Garretson*, 196 W.Va. 118, 128, 468 S.E.2d 733, 743 (1996).

**8.** The ALJ made the following findings:
… Mr. Disibbio had obtained a Provisional Professional Administrative Certificate, effective September 1, 1994, so he did possess the appropriate administrative certificate at the time he assumed his duties as Assistant Principal at PikeView at the beginning of the 1994–1995 school year. No evidence in the form of testimony or documentation was presented regarding when Mr. Disibbio completed the requirements necessary to obtain the Provisional Professional Administrative Certificate.

**9.** We note that W.Va.Code § 18A–2–9 (1993) provides that "assistant principals shall hold valid administrative certificates appropriate for their assignments." This provision also does not expressly indicate whether a Certificate is required before an applicant is interviewed or hired.

**10.** We also note that it is a common practice for employers to provisionally hire individuals before they have even taken the necessary tests to obtain certification or a license to carry out the tasks of the position they were hired to fill. For example, both private and public employers routinely fill legal positions with law school graduates before they have taken the bar examination.

or another, occasionally some individuals do not receive the appropriate certification or license as anticipated, and are therefore terminated. However, those instances are few. Therefore, we hold that the certification requirement for professional personnel under W.Va.Code § 18A–4–7a permits interviewing or hiring an applicant who does not physically possess the required certification, but who has completed the requirements for certification at the time of the interview or date of hiring and is waiting for the certification results.[11]

In the matter now before this Court it is clear from the evidence that Mr. Disibbio did not have a Certificate when he was interviewed for the position. It is equally clear that he was not in physical possession of a Certificate at the time he was hired. However, the record discloses that Mr. Disibbio did, in fact, complete all requirements for the Certificate before he was hired and received actual physical possession of the certificate before starting his duties. Therefore, we affirm the ALJ's decision that Mr. Disibbio possessed a Certificate as required by the statute.

## C.

### Did The Board Fairly Assign Points To Its Experience Criterion?

■ The Board allocated a total of five points for its "experience" criterion. The Board chose to use an "all or nothing" method for awarding "experience" points. That is, if an applicant had assistant principal experience of any length, the applicant received all five points. If an applicant had no experience as an assistant principal, the applicant received zero points for the "experience" criterion. In this case, Mr. Keatley and Mr. Disibbio each received five points for the "experience" criterion. Mr. Keatley argues that the Board's method of allocating experience points was arbitrary, in that it did not distinguish his twelve years of experience from Mr. Disibbio's one year of experience.

The experience criterion applied by the Board is set forth in W.Va.Code § 18A–4–7a and provides in relevant part:

A county board of education shall make decisions affecting the hiring of professional personnel ... on the basis of the applicant with the highest qualifications.... In judging qualifications, consideration shall be given to each of the following: .. amount of experience relevant to the position[.]

*See full text, supra.* The ALJ dismissed Mr. Keatley's argument under this statute by stating "that in selection of professional administrative positions, seniority is not one of the listed criteria and is not the equivalent of experience." We believe the ALJ misunderstood the argument made by Mr. Keatley.

The issue under consideration calls for this Court to examine the statutory language. We stated recently in syllabus point 4 of *McGraw v. St. Joseph's Hospital,* 200 W.Va. 114, 488 S.E.2d 389 (1997) that " ' " '[w]hen a statute is clear and unambiguous and the legislative intent is plain the statute should not be interpreted by the courts, and in such a case it is the duty of the courts not to construe but to apply the statute. Point 1, syllabus, *State ex rel. Fox v. Board of Trustees of the Policemen's Pension or Relief Fund of the City of Bluefield, et al.,* 148 W.Va. 369 [135 S.E.2d 262 (1964) ].' Syllabus Point 1, *State ex rel. Board of Trustees v. City of Bluefield,* 153 W.Va. 210, 168 S.E.2d 525 (1969)." Syl. pt. 3, *Central West Virginia Refuse, Inc. v. Public Service Com'n of West Virginia,* 190 W.Va. 416, 438 S.E.2d 596 (1993).' Syl. Pt. 2, *Keen v. Maxey,* 193 W.Va. 423, 456 S.E.2d 550 (1995)." Moreover, "[a] common maxim of statutory construction is that statutes are to be construed so as to give meaning to every word in them." *Bullman v. D & R Lumber Co.,* 195 W.Va. 129, 133, 464 S.E.2d 771, 775 (1995).

The issue of seniority is not the argument advanced by Mr. Keatley. Mr. Keatley contends that the statute requires the creation of an evaluation method which distinguishes the various levels of professional experience

11. Under our holding today an applicant can be in the process of starting or completing the requirements to obtain a Certificate during the interview stage. However, at the point of actually being hired the applicant must have completed all requirements for a Certificate.

when making the overall hiring determination.[12] The statute clearly requires the Board to consider the "amount" of experience of each applicant, not merely the "existence" of experience. The Board's method of awarding points does not comply with the statute's requirement to consider the "amount" of experience. The Board's "all or nothing" method only determines the "existence" of experience. It does not determine the "amount" of experience.

This Court has commented upon the issue of "experience," in the context of classroom teachers, in *State ex rel. Melchiori v. Board of Educ. of County of Marshall,* 188 W.Va. 575, 425 S.E.2d 251 (1992). The issue we confronted in *Melchiori* involved reduction in force and the transfer of a teacher under W.Va.Code § 18A–4–7a. The transfer was based upon a county board of education policy which did not consider classroom teaching experience when reassigning a teacher displaced due to a reduction in force. The affected teacher in *Melchiori* had thirteen years of experience as a physical education teacher. She was also certified to teach mentally handicapped students, but had not previously done so. Under the reduction in force policy, the teacher was reassigned to teach mentally handicapped students. The teacher contended that, because of her teaching experience in physical education, she should have been reassigned to a position in that area. We ultimately remanded the case to the county board of education with instructions that it reconsider its reduction in force transfer policy. In so doing, we held "that a *county board of education must give weight to the years of teaching experience* a displaced employee has in given subject areas when making a decision to reassign the

teacher pursuant to West Virginia Code Sec. 18A–4–7a." *Melchiori,* 188 W.Va. at 581, 425 S.E.2d at 257. (Emphasis added.) [13]

In reading W.Va.Code § 18A–4–7a in its entirety, we note that the legislature has made a marked distinction between "amount" of experience, and the "existence" of experience. *See West Virginia Health Care Cost Review Authority v. Boone Memorial Hosp.,* 196 W.Va. 326, 338, 472 S.E.2d 411, 423 (1996) ("It is a fundamental principle of statutory construction that the meaning of a word cannot be determined in isolation, but it must be drawn from the context in which it is used.") (citations omitted); *Smith v. United States,* 508 U.S. 223, 229, 113 S.Ct. 2050, 2054, 124 L.Ed.2d 138, 149 (1993) ("The meaning of a word that appears ambiguous if viewed in isolation [will] become clear when the word is analyzed in light of the term that surrounds it."); *United States Nat'l Bank of Or. v. Independent Ins. Agents of Am., Inc.,* 508 U.S. 439, 455, 113 S.Ct. 2173, 2182, 124 L.Ed.2d 402, 418 (1993) ("[statutory interpretation] is a holistic endeavor ... and, at a minimum, must account for a statute's full text, language as well as punctuation, structure and subject matter.") (internal quotations and citations omitted). Although set out in the context of criteria for classroom teachers, the term "amount" of experience, and "existence" of experience are two (2) separate and distinct criteria. The relevant section of W.Va.Code § 18A–4–7a states:

... If one or more permanently employed instructional personnel apply for a classroom teaching position and meet the standards set forth in the job posting, the county board of education shall make decisions affecting the filling of such positions

---

**12.** Mr. Keatley is not positing the argument that he should have been awarded the position solely on the grounds that he worked twelve years as an assistant principal and Mr. Disibbio only worked one year in that position. Mr. Keatley's argument is more subtle. He challenges the Board's decision to use a method of assigning points to "experience" that does not distribute those points based upon a formula which awards more points for greater years of experience and less points for lesser years of experience. In the final analysis, such a point formula would not automatically give the position to the individual with the highest experience points as the experience

points are calculated in the overall scoring system used by the Board. It is the final point tabulation which dictates the most qualified candidate for the position.

**13.** Our decision in *Pockl v. Ohio County Bd. of Educ.,* 185 W.Va. 256, 406 S.E.2d 687 (1991) is statutorily distinguishable from the matter now before this Court. *Pockl* involved an interpretation of former W.Va.Code § 18A–4–8b (1983), which was amended and reenacted as W.Va. Code § 18A–4–7a, by the 1990 Acts of the Legislature, 3rd Extraordinary Session, Chapter 4.

on the basis of the following criteria: Appropriate certification and/or licensure; *total amount of teaching experience; the existence of teaching experience in the required certification area;* degree level in the required certification area; specialized training directly related to the performance of the job as stated in the job description; receiving an overall rating of satisfactory in evaluations over the previous two years; and seniority. (Emphasis added.)

 The above provision of W.Va.Code § 18A–4–7a provides that when determining whether to fill a classroom teaching position with an instructional personnel applicant, county boards of education must look at, among other things, "amount of teaching experience" and "the existence of teaching experience" in the subject area.[14] The fact that "amount" and "existence" are each independently set forth as a factor in the context of hiring instructional personnel such as classroom teachers, indicates that the legislature intended to convey a different meaning to "amount" of experience and "existence" of experience.[15] That is, "amount" and "existence" are each intended to modify "experience" in a meaningfully different way. It has been a traditional rule of statutory construction that "the Legislature is presumed to intend that every word used in a statute has a specific purpose and meaning," *State ex rel. Johnson v. Robinson,* 162 W.Va. 579, 582, 251 S.E.2d 505, 508 (1979). We cannot ignore this significant statutory language. *See State v. Carper,* 176 W.Va. 309, 312, 342 S.E.2d 277, 280 (1986); *Wooddell v. Dailey,* 160 W.Va. 65, 68, 230 S.E.2d 466, 469 (1976). We held succinctly in syllabus point 2 of *State v. White,* 188 W.Va. 534, 425 S.E.2d 210 (1992) that " ' "[i]n ascertaining legislative intent, effect must be given to each part of the statute and to the statute as a whole so as to accomplish the general purpose of the legislation." Syl. Pt. 2, *Smith v. State Workmen's Compensation Commissioner,* 159 W.Va. 108, 219 S.E.2d 361 (1975).' Syl. Pt. 3, *State ex rel. Fetters v. Hott,* 173 W.Va. 502, 318 S.E.2d 446 (1984)." We hold, therefore, that pursuant to W.Va.Code § 18A–4–7a county boards of education must utilize a fair method of awarding credit for experience when filling professional personnel positions; such a method must establish a system that will differentiate experience among the applicants.[16]

 In the matter under consideration we believe the ALJ was clearly wrong

---

14. "A canon of statutory construction called *noscitur a sociis,* which holds that a word is known by the company it keeps, is pertinent here." *Martin v. Randolph County Bd. of Educ.,* 195 W.Va. 297, 312 n. 10, 465 S.E.2d 399, 414 n. 10 (1995), citing *Babbitt v. Sweet Home Chapter of Communities for a Great Oregon,* 515 U.S. 687, 692–95, 115 S.Ct. 2407, 2411, 132 L.Ed.2d 597, 613 (1995); *Darlington v. Mangum,* 192 W.Va. 112, 450 S.E.2d 809 (1994); *Banner Printing Co. v. Bykota Corp.,* 182 W.Va. 488, 388 S.E.2d 844 (1989); *Wolfe v. Forbes,* 159 W.Va. 34, 217 S.E.2d 899 (1975). The fact that "experience" has been specifically modified by "amount" and "existence" in separate provisions of the statute, counsels in favor of "experience" taking on a different connotation depending upon the word used to modify it. *"Expressio unius est exclusio alterius* (express mention of one thing implies exclusion of all others) is a well-accepted canon of statutory construction." *State ex rel. Riffle v. Ranson,* 195 W.Va. 121, 128, 464 S.E.2d 763, 770 (1995), citing *Brockway Glass Co. Inc., Glassware Div. v. Caryl,* 183 W.Va. 122, 394 S.E.2d 524 (1990); *Dotts v. Taressa J.A.,* 182 W.Va. 586, 591, 390 S.E.2d 568, 573 (1990); *McGlone v. Superior Trucking Co., Inc.,* 178 W.Va. 659, 663, 363 S.E.2d 736, 740 (1987). Put

another way, "every word used is presumed to have meaning and purpose, for the Legislature is thought by the courts not to have used language idly." *Bullman,* 195 W.Va. at 133, 464 S.E.2d at 775.

15. We pointed out in *State v. Williams,* 196 W.Va. 639, 641, 474 S.E.2d 569, 571 (1996) "the principle that statutes are to be read in pari materia and '[w]here it is possible to do so, it is the duty of the courts, in the construction of statutes, to harmonize and reconcile laws, and to adopt that construction of a statutory provision which harmonizes and reconciles it with other statutory provisions ...' to give force and effect to each, if possible." Quoting *State ex rel. Pinson v. Varney,* 142 W.Va. 105, 109–10, 96 S.E.2d 72, 75 (1956) (quoting 50 Am.Jur., Statutes § 363).

16. We hasten to point out that no set formula exists. Discretion must be appropriately used in creating point systems that make fair and reasonable adjustments for greater experience. As an example and nothing more, we offer the following scale: 1–5 years experience = 1 point; 6–10 years experience = 2 points; 11–15 years experience = 3 points; 16–20 years experience = 4 points; 21 or more years experience = 5 points.

in finding the Board's "all or nothing" allocation of points for experience was not arbitrary. Even so, Mr. Keatley does not prevail for three reasons. First, as the Board asserts, if its maximum five points for experience were assigned to Mr. Keatley based on an experience formula, Mr. Keatley's total score would remain lower than Mr. Disibbio's total score, because a total of six points separated them. Second, another undisclosed person actually ranked higher than Mr. Keatley and presumably would have been given the job had Mr. Disibbio declined the position. Third, and most importantly, the interpretation we have given to the "experience" criterion of W.Va.Code § 18A–4–7a is applicable prospectively only.[17] Therefore, the ALJ's decision to deny Mr. Keatley relief on this issue will not be disturbed.

### III.

### CONCLUSION

Based upon the foregoing discussion, the circuit court's order is affirmed.

Affirmed.

---

**17.** Although the statute in its present form dates back to 1990, we believe that undue hardship would result if we permitted our holding to apply retroactively. Every professional personnel hiring decision since 1990 would be challenged based upon our decision. Therefore, public policy demands that we limit our ruling to a prospective application. See Syl. Pt. 4, *Kincaid v. Mangum*, 189 W.Va. 404, 432 S.E.2d 74 (1993) (" 'In determining whether to extend full retroactivity, the following factors are to be considered: First, the nature of the substantive issue overruled must be determined. If the issue involves a traditionally settled area of law, such as contracts or property as distinguished from torts, and the new rule was not clearly foreshadowed, then retroactivity is less justified. Second, where the overruled decision deals with procedural law rather than substantive, retroactivity ordinarily will be more readily accorded. Third, common law decisions, when overruled, may result in the overruling decision being given retroactive effect, since the substantive issue usually has a narrower impact and is likely to involve fewer parties. *Fourth, where, on the other hand, substantial public issues are involved, arising from statutory or constitutional interpretations that represent a clear departure from prior precedent, prospective application will ordinarily be favored.* Fifth, the more radically the new decision departs from previous substantive law, the greater the need for limiting retroactivity. Finally, this Court will also look to the precedent of other courts which have determined the retroactive/prospective question in the same area of the law in their overruling decisions.' Syl. pt. 5, *Bradley v. Appalachian Power Co.*, 163 W.Va. 332, 256 S.E.2d 879 (1979)."). (Emphasis added.)