464 S.E.2d 777 (1995)
195 W.Va. 135
STATE of West Virginia ex rel. WATER DEVELOPMENT AUTHORITY, a Governmental Instrumentality and Public Body Corporate of the State of West Virginia, Petitioner
v.
NORTHERN WAYNE COUNTY PUBLIC SERVICE DISTRICT, a Governmental Instrumentality of the State of West Virginia and the Public Service Commission of West Virginia, Respondents.
No. 22965.
Supreme Court of Appeals of West Virginia.
Submitted September 12, 1995.
Decided October 27, 1995.
*779 James K. Brown and John Philip Melick, Jackson & Kelly, Charleston, for Petitioner.
Robert R. Rodecker and Jerri F. Heiskell, Charleston, for Respondent Northern Wayne County Public Service District.
Meyishi P. Blair, Charleston, for Respondent Public Service Commission of West Virginia.
*778 McHUGH, Chief Justice:
The Water Development Authority (hereinafter "WDA") seeks a writ of mandamus to compel the Northern Wayne County Public Service District (hereinafter "Public Service District") to impose a tap fee of $2,750.00 even though the Public Service Commission (hereinafter "PSC") ordered the Public Service District to reduce the $2,000.00 tap fee to $250.00. For reasons set forth below, we decline to issue a writ of mandamus.

I
One of the WDA's responsibilities is to improve the public water and sewer service throughout the State. See W.Va.Code, 22C-1-2 [1994]. Pursuant to this responsibility the WDA "may make loans and grants to governmental agencies for the acquisition or construction of water development projects by such governmental agencies[.]" W.Va. Code, 22C-1-5 [1994].[1] In order to be able to make loans to governmental agencies, such as the Public Service District, the WDA issues bonds which it repays from revenue collected from the local projects. W.Va. Code, 22C-1-5 [1994] and 22C-1-9 [1994]. When issuing its bonds the WDA agrees to impose all statutory rights, including the right to increase service charges, in order to ensure that the bonds are paid when a local borrower cannot make its loan repayment. W.Va.Code, 22C-1-7 and 12 [1994].
In the case before us, the WDA states it entered into a loan agreement and a supplemental loan agreement, both dated March 16, 1989, with the Public Service District. The proceeds from the loans were to be used by the Public Service District to construct a public sewer system.
The Public Service District must be able to pay for its own expenses including repayment of the loan made by the WDA. See W.Va.Code, 16-13A-9 [1994] and W.Va.Code, *780 22C-1-5 [1994]. However, in the case before us, the Public Service District has been unable to make payments on the debt owed to the WDA. Thus, the WDA requested the Public Service District to impose a higher tap fee (connection fee) in order to rectify the Public Service District's problem in repaying the WDA.
The Public Service District complied with the WDA's request by filing a proposed increase of its tap fee from $250.00 to $2375.00 with the PSC on February 24, 1992. The PSC entered an order dated June 3, 1992, establishing a $2000.00 tap fee on an interim basis pending the establishment of a permanent tap fee in the Public Service District's upcoming permanent rate case. The order further directed that all tap fees of $2000.00 collected pursuant to the June 3, 1992 order would be subject to refund depending on how the permanent rate case was decided. The PSC instructed the Public Service District to file for a general rate case as soon as possible because the PSC's longstanding policy has been that tap fees are not to be cost based. Instead, the tap fee merely represents some contribution by the customer to defray the costs of installing service connections. The WDA participated in the action before the PSC as an intervenor.
On October 13, 1992, the Public Service District filed a general rate case seeking, inter alia, an increase in its rates by 11.5% and the imposition of a tap fee of $2375.00. On February 25, 1993, an administrative law judge of the PSC approved a $2000.00 tap fee and an 11% increase in rates. However, by an order dated March 26, 1993, the PSC reduced the tap fee approved by the administrative law judge to $250.00 reiterating its policy that tap fees are not to be cost based because high tap fees discourage individuals from using a sanitary sewer system. Additionally, the PSC increased the Public Service District's rate to the requested 11.5%. The WDA fully participated in this action before the PSC as an intervenor.
On June 1, 1993, this Court denied the petition for appeal of the PSC's March 26, 1993 order. The WDA participated in the action before this Court.
Subsequently, because the Public Service District was still unable to repay the loan to the WDA, the WDA, by a letter dated October 24, 1994, directed the Public Service District to immediately increase its tap fee to $2,750.00. In response, the Public Service District filed a petition with the PSC on December 21, 1994, seeking to immediately increase its tap fee from $250.00 to $2,750.00. The PSC, in an order dated April 19, 1995, again restated its policy regarding tap fees and rejected the Public Service District's request. The PSC encouraged the Public Service District to file a general rate case in order to rectify the Public Service District's problem of repaying the loans to the WDA.[2] The order also indicated that the PSC was not ruling out an increase in the tap fee. The WDA did not participate in the action leading up to the April 19, 1995 order of the PSC.
On June 21, 1995, the WDA filed the petition for a writ of mandamus which is currently before us alleging that the Public Service District should be compelled to impose a $2750.00 tap fee because it has authority to impose a service charge on defaulting districts pursuant to W.Va.Code, 22C-1-7 [1994] regardless of the PSC's orders. The WDA maintains that if it does not have the authority to require the Public Service District to impose the tap fee, it will have to include the uncertainty of its authority to enforce debt payment in the official statement required by the Securities and Exchange Commission which will reflect unfavorably on the integrity of the bonds it issues.

II
The issue before us is whether the WDA's authority pursuant to W.Va.Code, 22C-1-7 [1994] to impose service charges on projects it funds when the projects' owners are in default on WDA loans is subject to the regulatory review and approval of the PSC. For reasons explained below, we find that the *781 WDA's authority is subject to the regulatory review and approval of the PSC.
The dispute in the case before us centers on the following language found in W.Va. Code, 22C-1-7 [1994], in relevant part:[3]
In order to ensure that the public purposes to be served by the [WDA] may be properly carried out and in order to assure the timely payment to the [WDA] of all sums due and owing under loan agreements with governmental agencies ... notwithstanding any provision to the contrary elsewhere contained in this code, in event of any default by a governmental agency under such a loan agreement, the [WDA] has, and may, at its option, exercise the following rights and remedies in addition to the rights and remedies conferred by law or pursuant to said loan agreement:
(1) The [WDA] may directly impose, in its own name and for its own benefit service charges determined by it to be necessary under the circumstances upon all users of the water development project to be acquired or constructed pursuant to such loan agreement, and proceed directly to enforce and collect such service charges, together with all necessary costs of such enforcement and collection.
The WDA contends that the above language gives it exclusive authority, which is not subject to the PSC's jurisdiction, to impose service charges for defaulting borrowers in order to ensure that the integrity of the bonds it issues is preserved. The WDA further asserts that rules of statutory interpretation do not apply because the above language clearly and unambiguously confers certain powers upon the WDA "notwithstanding any provision to the contrary elsewhere contained in this code." See syl. pt. 1, State v. Highland, 174 W.Va. 525, 327 S.E.2d 703 (1985) ("`Where the language of a statute is clear and without ambiguity the plain meaning is to be accepted without resorting to the rules of interpretation.' Syl. pt. 1, State v. Warner, 172 W.Va. 502, 308 S.E.2d 142 (1983).").
Conversely, the PSC argues that W.Va. Code, 22C-1-7 [1994] is ambiguous and, therefore, must be construed. The PSC acknowledges that the WDA may directly impose upon the users of the Public Service District "in its own name for its own benefit service charges determined by it to be necessary" when the Public Service District defaults on a loan made by the WDA. However, the PSC maintains that when a public utility, as defined in W.Va.Code, 24-1-2 [1979],[4] is involved, the WDA's authority to *782 impose such service charges is subject to the regulatory review and approval of the PSC. In arriving at its conclusion, the PSC analogizes the "notwithstanding any provision to the contrary" language found in W.Va.Code, 22C-1-7 [1994] to similar language found in W.Va.Code, 16-13A-9 [1994]. W.Va.Code, 16-13A-9 [1994] gives the Public Service District authority to establish rates and charges "notwithstanding the provisions of any other law[.]" However, the PSC concludes that this language does not give the Public Service District authority to impose rates and charges without regulatory review or approval of the PSC. The PSC, thus, asks this Court to construe the authority given to the WDA to impose service charges upon defaulting governmental entities pursuant to W.Va.Code, 22C-1-7 [1994] as being subject to the regulatory review and approval of the PSC when a public utility is involved.
We agree with the PSC that W.Va. Code, 22C-1-7 [1994] is ambiguous. "A statute that is ambiguous must be construed before it can be applied." Syl. pt. 1, Farley v. Buckalew, 186 W.Va. 693, 414 S.E.2d 454 (1992). Furthermore, "`[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature.' Syllabus Point 1, Smith v. State Workmen's Compensation Commissioner, 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syl. pt. 2, Farley, supra. There are many different rules of statutory construction which may be used to ascertain the intent of the legislature. One such rule is that
`"`[a] statute should be so read and applied as to make it accord with the spirit, purposes and objects of the general system of law of which it is intended to form a part; it being presumed that the legislators who drafted and passed it were familiar with all existing law, applicable to the subject matter, whether constitutional, statutory or common, and intended the statute to harmonize completely with the same and aid in the effectuation of the general purpose and design thereof, if its terms are consistent therewith.' Syllabus Point 5, State v. Snyder, 64 W.Va. 659, 63 S.E. 385 (1908)." Syl. pt. 1, State ex rel. Simpkins v. Harvey, [172] W.Va. [312], 305 S.E.2d 268 (1983).' Syl. Pt. 3, Shell v. Bechtold, 175 W.Va. 792, 338 S.E.2d 393 (1985).
Syl. pt. 1, Lee v. West Virginia Teachers Retirement Board, 186 W.Va. 441, 413 S.E.2d 96 (1991).
An examination of the purpose of the PSC reveals that the WDA's application of W.Va. Code, 22C-1-7 [1994] would seriously erode the authority of the PSC. The legislature stated, inter alia, the following in W.Va. Code, 24-1-1 [1986]:
(a) It is the purpose and policy of the Legislature in enacting this chapter [chapter 24] to confer upon the public service commission of this state the authority and duty to enforce and regulate the practices, services and rates of public utilities in order to:
(1) Ensure fair and prompt regulation of public utilities in the interest of the using and consuming public; [and]
....
(4) Ensure that rates and charges for utility services are just, reasonable, applied without unjust discrimination or preference,... and based primarily on the costs of providing these services[.]
See also syl. pt. 2, Lumberport-Shinnston Gas Co. v. Public Service Comm'n, 165 W.Va. 762, 271 S.E.2d 438 (1980) ("The Public Service Commission is empowered to require reasonable practices or services from a company that has been found to have unjust or unreasonable practices[.]") and Chesapeake & Potomac Telephone Company of West Virginia v. City of Morgantown, 144 W.Va. 149, 162, 107 S.E.2d 489, 496 (1959) (The statutes governing the PSC "disclose a clear legislative policy, for the public good, to place the regulation of public utilities under State control.").
In furtherance of the PSC's purpose the legislature conferred primary rate-making jurisdiction of utility service upon it. See W.Va.Code, 24-2-1 [1991], 24-2-2 [1935] *783 and W.Va.Code, 24-2-3 [1983]. In fact, the legislature has specifically stated that
[t]he [PSC] shall have power to enforce, originate, establish, change and promulgate tariffs, rates, joint rates, tolls and schedules for all public utilities[.] ... And whenever the [PSC] shall, after hearing, find any existing rates, tolls, tariffs, joint rates or schedules unjust, unreasonable, insufficient or unjustly discriminatory or otherwise in violation of any of the provisions of this chapter, the [PSC] shall by an order fix reasonable rates, joint rates, tariffs, tolls or schedules to be followed in the future in lieu of those found to be unjust, unreasonable, insufficient or unjustly discriminatory or otherwise in violation of any provisions of law[.]
W.Va.Code, 24-2-3 [1983], in pertinent part.[5] As noted by this Court, "W.Va.Code, 24-2-3 (1983), clearly and unambiguously gives the Public Service Commission the power to reduce or increase rates whenever it finds that the existing rate is unjust, unreasonable, insufficient, or unjustly discriminatory or otherwise in violation of any provision of W.Va. Code, 24-1-1, et seq." Syl. pt. 2, Central West Virginia Refuse, Inc. v. Public Service Commission, 190 W.Va. 416, 438 S.E.2d 596 (1993). The legislature sought to establish in the PSC a governmental entity which would protect the public from unfair rates and practices by public utilities and also ensure that public utilities are given a competitive return for their stockholders. See syllabus, Virginia Electric and Power Co. v. Public Service Commission, 161 W.Va. 423, 242 S.E.2d 698 (1978) ("The Public Service Commission may employ such methods for determining utility rates as it deems suitable, so long as the end result guarantees West Virginia consumers good service at fair rates and enables utilities to earn a competitive return for their stockholders upon their investment in West Virginia.").
The WDA is asking this Court to apply W.Va.Code, 22C-1-7 [1994] in a manner which would allow the WDA to circumvent the PSC's jurisdiction to protect the public from unfair, unreasonable or discriminatory rates or practices. The WDA's application of W.Va.Code, 22C-1-7 [1994] is not consistent with the legislative purpose of creating the PSC nor is it consistent with the statutory scheme intended by the legislature.
For instance, as we have previously discussed, W.Va.Code, 16-13A-9 [1994] gives the Public Service District similar authority to that given to the WDA in W.Va.Code, 22C-1-7 [1994] to set rates:
[The Public Service District] board shall establish rates and charges for the services and facilities it furnishes, which shall be sufficient at all times, notwithstanding the provisions of any other law or laws, to pay the cost of maintenance, operation and depreciation of such public service properties and principal of and interest on all bonds issued, other obligations incurred under the provisions of this article and all reserve or other payments provided for in the proceedings which authorized the issuance of any bonds hereunder.
W.Va.Code, 16-13A-9 [1994], in relevant part (emphasis added). The PSC maintains that in spite of the "notwithstanding the provisions of any other law or laws" language in W.Va.Code, 16-13A-9 [1994], there is no question that the rates set by the Public Service District are subject to the review of the PSC. See W.Va.Code, 24-2-1 [1991], 24-2-2 [1935] and 24-2-3 [1983]. See also W.Va.Code, 16-13A-1a [1986].
Given that the Public Service District's authority to impose rates and charges is subject to review by the PSC, the same "notwithstanding any provision to the contrary elsewhere contained in this code" language found in W.Va.Code, 22C-1-7 [1994] likewise does not confer authority upon the WDA to impose service charges without approval by the PSC. Moreover, as argued by the PSC, to hold otherwise would prevent anyone from having a means to challenge an unreasonable rate or service charge set by the WDA thereby defeating the legislature's purpose in creating the PSC. Indeed, the WDA's application of W.Va.Code, 22C-1-7 *784 [1994] would conceivably allow persons not knowledgeable in utility regulations to impose service charges upon public utilities without any supervision by the PSC. Therefore, it is unlikely that the legislature intended to allow the WDA to impose service charges without regulatory review and approval by the PSC.[6]
The legislature gave the WDA authority to impose service charges pursuant to W.Va. Code, 22C-1-7 [1994] when a governmental agency defaults on its loans in order to protect the integrity of the bonds issued by the WDA. The WDA is, thus, in effect, authorized to make certain business decisions for the governmental agency that defaults on its loan:
(2) The [WDA] may exercise, in its own name or in the name of and as agent for the governmental agency, all of the rights, authority, powers and remedies of the governmental agency with respect to the water development project or which may be conferred upon the governmental agency by statute, rule, regulation or judicial decision, including, without limitation, all rights and remedies with respect to users of such water development project.
W.Va.Code, 22C-1-7(2) [1994]. While W.Va. Code, 22C-1-7 [1994] allows the WDA to make certain business decisions for the defaulting governmental agency, the WDA's actions are still subject to the review of the PSC if the defaulting governmental agency operates a public utility, as defined in W.Va. Code, 24-1-2 [1979], as noted in this opinion.
Accordingly, we hold that W.Va.Code, 22C-1-7 [1994] authorizes the Water Development Authority to directly impose on a public service district, which operates a public utility as defined in W.Va.Code, 24-1-2 [1979], "in its own name and for its own benefit service charges determined by it to be necessary" when the public service district defaults on a loan made by the Water Development Authority to the public service district. However, the Water Development Authority's power to impose such service charges upon the public service district which operates a public utility is subject to the regulatory review and approval of the Public Service Commission pursuant to W.Va.Code, 24-2-1 [1991].[7]

III
In conclusion, this Court held the following in syllabus point 2 of State ex rel. Kucera v. City of Wheeling, 153 W.Va. 538, 170 S.E.2d 367 (1969): "A writ of mandamus will not issue unless three elements coexist  (1) a clear legal right in the petitioner to the relief sought; (2) a legal duty on the part of respondent to do the thing which the petitioner *785 seeks to compel; and (3) the absence of another adequate remedy." In the case before us, the WDA has failed to meet the first of the three elements necessary for the issuance of a writ of mandamus. The Public Service District has followed the directives of the WDA by petitioning the PSC to increase the tap fee. Furthermore, as we explained above, the WDA is not entitled to direct the Public Service District to reinstate a tap fee of $2,750.00 in contravention of the PSC's order requiring the Public Service District to reduce the $2000.00 tap fee to $250.00. Thus, we decline to issue a writ of mandamus.
Writ denied.
ALBRIGHT, Justice, did not participate.
MILLER, Retired Justice, sitting by temporary assignment.
NOTES
[1] W.Va.Code, 22C-1-5 was amended in 1995; however, the amendments do not affect the outcome of this case.
[2] At the time the petition for a writ of mandamus now before us was filed, the Public Service District had not yet filed a general rate case, although the Public Service District has provided notice to the PSC of its intent to file such a case.
[3] W.Va.Code, 22C-1-7 [1994] states in full:

In order to ensure that the public purposes to be served by the [WDA] may be properly carried out and in order to assure the timely payment to the [WDA] of all sums due and owing under loan agreements with governmental agencies, as referred to in section five of this article, notwithstanding any provision to the contrary elsewhere contained in this code, in event of any default by a governmental agency under such a loan agreement, the [WDA] has, and may, at its option, exercise the following rights and remedies in addition to the rights and remedies conferred by law or pursuant to said loan agreement:
(1) The [WDA] may directly impose, in its own name and for its own benefit service charges determined by it to be necessary under the circumstances upon all users of the water development project to be acquired or constructed pursuant to such loan agreement, and proceed directly to enforce and collect such service charges, together with all necessary costs of such enforcement and collection.
(2) The [WDA] may exercise, in its own name or in the name of and as agent for the governmental agency, all of the rights, authority, powers and remedies of the governmental agency with respect to the water development project or which may be conferred upon the governmental agency by statute, rule, regulation or judicial decision, including, without limitation, all rights and remedies with respect to users of such water development project.
(3) The [WDA] may, by civil action, mandamus or other judicial or administrative proceeding, compel performance by such governmental agency of all of the terms and conditions of such loan agreement including, without limitation, the adjustment and increase of service charges as required to repay the loan or otherwise satisfy the terms of such loan agreement, the enforcement and collection of such service charges and the enforcement by such governmental agency of all rights and remedies conferred by statute, rule, regulation or judicial decision.
[4] W.Va.Code, 24-1-2 [1979] states, in relevant part:

Except where a different meaning clearly appears from the context the words `public utility' when used in this chapter shall mean and include any person or persons, or association of persons, however associated, whether incorporated or not, including municipalities, engaged in any business, whether herein enumerated or not, which is, or shall hereafter be held to be, a public service.
[5] W.Va.Code, 24-2-4a [1986] sets forth specific procedures for public utilities to follow when changing rates.
[6] A further examination of the statutory scheme reveals that the legislature expressly limited the PSC's jurisdiction over municipalities in W.Va. Code, 24-2-4b [1994] which states, in relevant part:

(a) The rates and charges of electric cooperatives, natural gas cooperatives and municipally operated public utilities, except for municipally operated commercial solid waste facilities as defined in section two [§ 22-15-2], article fifteen, chapter twenty-two of this code, and the rates and charges for local exchange services provided by telephone cooperatives are not subject to the rate approval provisions of section four or four-a [§ 24-2-4 or § 24-2-4a] of this article, but are subject to the limited rate provisions of this section.
In the case before us, however, the parties have not provided us with nor could we find a similar statutory provision which expressly limits the PSC's jurisdiction when the WDA sets the rates or charges of a defaulting public service district.
[7] The WDA's petition for a writ of mandamus focuses on the wording of the contract between it and the Public Service District arguing that the contract contemplates the WDA being able to set rates for the Public Service District if it defaults. However, this Court has stated that

all contracts made by a utility relating to the public service must be deemed to be entered into in contemplation of the exercise by the state of its regulatory power whenever the public interest may make it necessary; and when such contracts are the subject of statutory regulation, no contract for service may be made by a public utility except as provided by law, although an otherwise valid contract is binding on the parties to it until a departure from such contract has been directed by competent authority.
Preston County Light & Power Co. v. Renick, 145 W.Va. 115, 129, 113 S.E.2d 378, 387 (1960) (citations omitted). Clearly, the WDA and a governmental agency cannot by contract prevent the PSC from exercising lawful jurisdiction over matters expressly conferred within its jurisdiction by statute.