512 S.E.2d 201

**BERKELEY COUNTY PUBLIC SERVICE SEWER DISTRICT,**
Appellant,

v.

**The WEST VIRGINIA PUBLIC SERVICE COMMISSION, the City of Martinsburg and Opequon Public Service District,** Appellees.

**Opequon Public Service District, Appellant,**

v.

**The West Virginia Public Service Commission, the City of Martinsburg and Berkeley County Public Service Sewer District,** Appellees.

Nos. 25007, 25008.

Supreme Court of Appeals of West Virginia.

Submitted Oct. 27, 1998.

Decided Dec. 11, 1998.

William F. Rohrbaugh, Esq., McNeer, Highland, McMunn and Varner, L.C., Martinsburg, West Virginia, Attorney for Berkeley County Public Service Sewer District.

Richard G. Gay, Esq., Margaret B. Gordon, Law Office of Richard G. Gay, L.C., Berkeley Springs, West Virginia, Attorney for Opequon Public Service District.

John Philip Melick, Jackson & Kelly, Charleston, West Virginia, Attorney for the City of Martinsburg.

Cassius H. Toon, Charleston, West Virginia, Attorney for the Public Service Commission of West Virginia.

McCUSKEY, Justice:

The parties to this proceeding are engaged in a tug-of-war over the right to provide water and sewer utility service to a newly developed tract of land located in Berkeley County, West Virginia. On one end of the struggle are the appellants, Berkeley County Public Service Sewer District ("Sewer District") and Opequon Public Service District ("Water District"). On the opposite end is the appellee, the City of Martinsburg ("City"). The parties' respective arguments were aired before the Public Service Commission of West Virginia ("PSC"). In its final order, the PSC awarded the right to serve the contested tract to the City. On

appeal from that ruling, we are asked to decide which entity, between a city and a public service district, has the superior right to extend its facilities to provide utility service to a previously unserved tract of real estate, located within the district, when that tract has been annexed into the city. The appellants request that we reverse the PSC's order. We conclude that *W.Va.Code* § 16–13A–8 (1981) controls the outcome of this dispute and that the PSC's award of service rights to the City was consistent with that statute. We find, however, that although the result reached by the PSC was correct, the PSC erroneously discarded *W.Va.Code* § 16–13A–8 in making its analysis, and, for that reason, we affirm the final holding of the PSC under the rationale hereinafter set forth.

I.

*Factual Background*

These consolidated cases concern a tract of about 13 acres, located in Berkeley County, West Virginia and owned by Picerne Development ("Picerne").[1] On that tract stands a 204 unit apartment complex, known as Martin's Landing, which was recently built by Picerne. The tract lies inside the City's municipal limits. The tract also lies inside the geographic boundaries of both the Water District and the Sewer District. These overlapping borders, of the City and the Districts, have led to the instant conflict over service rights.

The boundaries of each public service district were defined by the County Commission of Berkeley County ("County Commission") in its orders creating and, in the case of the Water District, enlarging, the districts. The order creating the Sewer District, entered April 10, 1979, delineates "the territory to be embraced by this public service district" as "all of Berkeley County, West Virginia." The order creating the Water District, entered January 20, 1961, described it as "embracing ... the territorial limits of Opequon Magisterial District of Berkeley County, West Virginia." The Water District's bor-

---

1. Perini Investment Properties, Inc., was the predecessor in title to Picerne, but apparently took no action to develop the property. Thus, for purposes of this decision, Picerne is the relevant utility "customer."

ders were subsequently expanded by the County Commission, by order entered December 3, 1965, to encompass part of Hedgesville Magisterial District, including the tract occupied by Martin's Landing. Pursuant to that order, the Water District's territory was enlarged "to more nearly coincide with its service area authorized heretofore by the Public Service Commission." The Water District's "service area," at that time, was established in a PSC order, issued December 27, 1961, granting the Water District a certificate of public convenience and necessity[2] to provide public water service throughout Opequon Magisterial District and in a portion of Hedgesville Magisterial District, including the 13 acre tract now at issue.

On May 3, 1990, long after the creation of both public service districts, and the enlargement and certification of the Water District, the 13 acre tract was annexed into the City. This was accomplished by a minor adjustment of the City's boundaries, in accordance with *W.Va.Code* § 8–6–5 (1989).[3] As a result of the annexation, the tract in question was "included within the corporate limits of the City of Martinsburg, West Virginia."[4]

The proceedings below were initiated by the Sewer District and Water District through the filing of separate complaints with the PSC against the City, on April 4, 1996, and May 30, 1997, respectively. Each district alleged that Martin's Landing was located within its "franchise area," and sought an order barring the City from providing the utility service available from the district to Martin's Landing and directing the district to provide such service to Martin's Landing if Picerne applied for it.

The separate proceedings were consolidated by the PSC, by an order entered July 15, 1996, and referred, pursuant to that order, for decision by a PSC Administrative Law Judge. On September 26, 1996, a public hearing in the consolidated proceedings was conducted by the PSC's Chief Administrative Law Judge. During the hearing, the parties presented exhibits and the testimony of various witnesses. The parties and PSC Staff Counsel subsequently filed legal briefs, and on December 20, 1996, the Administrative Law Judge issued a Recommended Decision dismissing both complaints. The ALJ reasoned that because the City operates a combined waterworks and sewage system, as defined in *W.Va.Code* § 8–20–1 (1969),[5] and

---

**2.** *See W.Va.Code* § 24–2–11 (1983).

**3.** *W.Va.Code* § 8–6–5 (1989) provides:

In the event a municipality desires to increase its corporate limits by making a minor boundary adjustment, the governing body of such municipality may apply to the county commission of the county wherein the municipality or the major portion of the territory thereof, including the territory to be annexed, is located for permission to effect such annexation by minor boundary adjustment.

Such application shall disclose the number of persons residing in the territory to be annexed to the corporate limits by the proposed change, and shall have attached thereto an accurate map showing the metes and bounds of such additional territory.

If satisfied that the proposed annexation is only a minor boundary adjustment, the county commission shall order publication of a notice of the proposed annexation to the corporate limits and of the date and time set by the commission for a hearing on such proposal. Publication shall be as in the case of an election calling for an election, as set forth in section two of this article. A like notice shall be prominently posted at not less than five public places within the area proposed to be annexed.

If the freeholders of the area proposed to be annexed who are present or are represented at the hearing are not substantially opposed to the proposed boundary change, the commission may enter an order changing the corporate limits of the municipality as requested, which order may be reviewed by the circuit court as an order of a county commission ordering an election may be reviewed under section sixteen, article five of this chapter. After the date of such order, the corporate limits of the municipality shall be as set forth therein, unless judicial review is sought under the provisions of said section sixteen. If the proposed change is substantially opposed at the hearing by any such freeholder the commission shall dismiss the application. Dismissal of any such application shall not preclude proceedings in accordance with the provisions of sections two and three or section four of this article. The municipality shall pay the costs of all proceedings under this section.

**4.** *See* May 3, 1990, Order of the Berkeley County Commission.

**5.** W.Va.Code § 8–20–1 (1969) provides:

Any municipality may acquire, construct, establish and equip and thereafter repair, maintain and operate a combined waterworks and

because Picerne's property is within a twenty-mile radius of the City, the City has an absolute right, under that statute, to serve Martin's Landing.

In response to the Recommended Decision, exceptions were filed by the districts and by the PSC's Staff Attorney. After considering the exceptions, and the City's response to the exceptions, the PSC issued a unanimous order finding in favor of the City and dismissing the complaints. In that order, dated July 25, 1997, the PSC rejected the ALJ's analysis of *W.Va.Code* § 8-20-1 and held that "once the annexation occurred, the provisions of *West Virginia Code* § 16-13A-8 prohibit the Districts from providing service in the disputed area without the City's consent."

Petitions for reconsideration and rehearing of the PSC's decision were filed by the districts and PSC Staff, and the City filed a response to the petitions. On October 22, 1997, the PSC issued a Commission Order on Reconsideration, reaching the same result as its original order, that is, the dismissal of both complaints. In the Order on Reconsideration, which was a 2-1 decision, the majority retracted some of the legal conclusions contained in its first order and offered a new rationale for permitting the City to serve Picerne's property. The PSC majority reasoned, in part:

> As this dispute involves the application of at least two conflicting statutes [*W.Va.Code* § 16-13A-8 and *W.Va.Code* § 16-13A-2] from which legislative intent applicable to these facts cannot be discerned, ... it is within this Commission's authority to resolve this case.

Having found irreconcilable conflict between what it perceived to be applicable statutes, the PSC proceeded to hold that, as between the districts and the City, the City

sewerage system either wholly within or partly within and partly without the corporate limits thereof, under the provisions of this article, and any municipality owning and operating either a waterworks or a sewerage system, but not both, may acquire, construct, establish and equip the waterworks or sewerage system which it does not then own and operate, and in either of such cases such municipality may provide by ordinance that when such waterworks or sewerage system, or both, shall have been acquired, constructed, established and equipped, the same shall thereafter be owned, repaired, maintained and operated as a combined undertaking under the provisions of this article, and any municipality already owning and operating an existing waterworks system and an existing sewerage system may by ordinance combine the same into a single undertaking under the provisions of this article.

Any municipality which has combined its waterworks and sewerage system under the provisions of this article, or pursuant to provisions of any other law, may hereafter construct extensions, additions, betterments and improvements to either the waterworks system or the sewerage system of said combined waterworks and sewerage system, or both, and may finance the acquisition, construction, establishment and equipment of any such waterworks or sewerage system, or both, or the construction of extensions, additions, betterments and improvements to either the waterworks system or the sewerage system of such combined waterworks and sewerage system, or both, by the issuance of revenue bonds under the provisions of this article.

Notwithstanding the provisions of any other law or charter to the contrary, any such municipality may serve and supply the area included within twenty miles outside its corporate limits with the water or sewer services and facilities, or both, of its combined waterworks and sewerage system: Provided, That such water or sewer services and facilities shall not be served or supplied within the corporate limits of any other municipality without the consent of the governing body of such other municipality.

When used in this article, the term "waterworks system" shall be construed to mean and include a waterworks system in its entirety or any integral part thereof, including mains, hydrants, meters, valves, standpipes, storage tanks, pump tanks, pumping stations, intakes, wells, impounding reservoirs, pumps, machinery, purification plants, softening apparatus, and all other facilities necessary, appropriate, useful, convenient or incidental in connection with or to a water supply system; the term "sewerage system" shall be construed to mean and include any or all of the following: A sewage treatment plant or plants, collecting, intercepting and outlet sewers, lateral sewers, drains, force mains, conduits, pumping stations, ejector stations and all other appurtenances, extensions, additions and improvements necessary, appropriate, useful, convenient or incidental for the collection, treatment and disposal in a sanitary manner of sewage and industrial wastes; and the term "combined waterworks and sewerage system" shall be construed to mean and include a waterworks and sewerage system, which a municipality determines by ordinance to operate in combination.

has the right to provide water and sewer service to Martin's Landing. This decision, explained the majority, was based upon three factors: (1) "the disputed area has been annexed into the City," (2) "neither District has facilities in place within the disputed area," and (3) "the customer desires to be served by the City." The majority's order was pointedly criticized, in a dissenting opinion authored by Commissioner Frum, as an unwarranted departure from the "fundamental reasoning" set forth in the first PSC order. It is the PSC majority's order of October 22, 1997, that is the target of this appeal.

## II.

### Standard of Review

■ The standard of review applicable to a final decision of the PSC was articulated by this Court in Syllabus Point 2 of *Monongahela Power Co. v. Public Service Comm'n.*, 166 W.Va. 423, 276 S.E.2d 179 (1981), as follows:

> In reviewing a Public Service Commission order, we will first determine whether the Commission's order, viewed in light of the relevant facts and of the Commission's broad regulatory duties, abused or exceeded its authority. We will examine the manner in which the Commission has employed the methods of regulation which it has itself selected, and must decide whether each of the order's essential elements is supported by substantial evidence. Finally, we will determine whether the order may reasonably be expected to maintain financial integrity, attract necessary capital, and fairly compensate investors for the risks they have assumed, and yet provide appropriate protection to the relevant public interests, both existing and foreseeable. The court's responsibility is not to supplant the Commission's balance of these interests with one more nearly to its liking, but instead to assure itself that the Commission has given reasoned consideration to each of the pertinent factors.

Additionally, in Syllabus Point 3 of *Appalachian Power Co. v. State Tax Dept.*, 195 W.Va. 573, 466 S.E.2d 424 (1995), this Court set forth the standard applicable to agency decisions based on statutory interpretation, stating:

> In deciding whether an administrative agency's position should be sustained, a reviewing court applies the standards set out by the United States Supreme Court in *Chevron U.S.A., Inc. v. Natural Resources Defense Council, Inc.*, 467 U.S. 837, 104 S.Ct. 2778, 81 L.Ed.2d 694 (1984). The court first must ask whether the Legislature has directly spoken to the precise question at issue. If the intention of the Legislature is clear, that is the end of the matter, and the agency's position only can be upheld if it conforms to the Legislature's intent. No deference is due the agency's interpretation at this stage.

We utilize these standards in reviewing the issue now before us.

## III.

### Discussion

As stated earlier, the issue before this Court concerns priority of service rights. That is, which entity, as between a municipality and a public service district, has the superior right to extend its existing facilities to provide water or sewer service to a previously unserved tract, located within the public service district, after that tract has been annexed into the municipality?

### A.

### W.Va.Code § 16–13A–2

■ In these proceedings, the Water District and the Sewer District stake their claims of service rights on the fact that the tract in dispute has been within their respective boundaries, as designated by the County Commission, since before the land was annexed by the City of Martinsburg. They suggest that the service rights of a public service district are coextensive with its territorial boundaries, resulting in an exclusive "service territory." The districts contend that the only way in which a public service district's boundaries may be altered, and its corresponding service area reduced, is by an order of the County Commission entered

pursuant to *W.Va.Code* § 16–13A–2 (1986) (amended 1995).[6]

■ The fatal flaw in the districts' argument is that *W.Va.Code* § 16–13A–2 has nothing to do with service rights and, therefore, is completely inapposite to the issue presented. This Court has consistently recognized that " ' " '[w]hen a statute is clear and unambiguous and the legislative intent is plain the statute should not be interpreted by the courts, and in such a case it is the duty of the courts not to construe but to apply the statute. Point 1, syllabus, *State ex rel. Fox v. Board of Trustees of the Policemen's Pension or Relief Fund of the City of Bluefield, et al.,* 148 W.Va. 369, 135 S.E.2d 262.' Syllabus Point 1, *State ex rel. Board of Trustees v. City of Bluefield,* 153 W.Va. 210, 168 S.E.2d 525 (1969)." Syl. pt. 3, *Central West Virginia Refuse, Inc. v. Public Service Comm'n of West Virginia,* 190 W.Va. 416, 438 S.E.2d 596 (1993).' Syl. Pt. 2, *Keen v. Maxey,* 193 W.Va. 423, 456 S.E.2d 550 (1995)." Syl. pt. 4, *McGraw v. St. Joseph's Hosp.,* 200 W.Va. 114, 488 S.E.2d 389 (1997). The 1986 version of *W.Va.Code* § 16–13A–2[7] describes in detail how a public service district is to be created and its boundaries established, and modified if necessary, but the statute does not address how those boundaries affect the district's service rights. Further, this statute grants no monopoly nor absolute right to a public service district with respect to the provision of utility services within its territory.

It is also significant that, while *W.Va.Code* § 16–13A–2 (1986) permits a county commission to propose, and ultimately create, a public service district, the statute stipulates that "no new public service district shall be created under this section without the written consent and approval of the public service commission." This prior approval by the PSC is likewise required, under the statute, where the county commission desires to reduce the area of the district. *See W.Va.Code* § 16–13A–2 (1986). Thus, a county commission's power to reduce a district's territory is not absolute, as the Water District and Sewer District contend, but is actually contingent upon the prior approval of the PSC.

The districts seek a construction of *W.Va. Code* § 16–13A–2 (1986) that empowers county commissions to define exclusive service territories of public service districts. As elucidated by the City, however, such an interpretation would permit county commissions to "supplant the PSC as the arbiter of public convenience and necessity" with respect to public utility services. This result was clearly not intended by the Legislature, which enacted Chapter 24 of the *West Virginia Code* for an express legislative purpose: "to confer upon the public service commission of this state the authority and duty to enforce and regulate the practices, services and rates of public utilities." *W.Va.Code* § 24–1–1(a) (1986). Indeed, this Court has long recognized "[t]he paramount design of pertinent statutes to place regulation and control of public utilities exclusively with the Public

6. The districts rely on the 1986 version of *W.Va. Code* § 16–13A–2, which was in effect when Martin's Landing was annexed into the City.

7. W.Va.Code § 16–13–2 (1986) provides, in part:

The county commission of any county may, on its own motion by order ... propose the creation of such public service district within such county, setting forth ... a description, including metes and bounds, sufficient to identify the territory to be embraced therein.... Provided, That no new public service district shall be created under this section without the written consent and approval of the public service commission, which approval and consent shall be in accordance with rules and regulations promulgated by the public service commission.... If the county commission determines that the construction or acquisition and maintenance, operation, improvement and exten-

sion of public service properties by such public service district will be conducive to the preservation of public health, comfort and convenience of such area, the county commission shall by order create such public service district.

\* \* \*

The county commission may ... in its discretion ... enlarge the district to include additional areas, reduce the area of the district, ... or dissolve the district if inactive or establish or consolidate two or more such districts.... Provided, That where the county commission determines ... to enlarge the district, merge and consolidate districts, ... reduce the area of the district or dissolve the district if inactive, ... all of the applicable provisions of this article providing for ... approval by the public service commission shall apply with like effect as if a district were being created.

Service Commission." *Chesapeake & Potomac Telephone Co. v. City of Morgantown*, 144 W.Va. 149, 160, 107 S.E.2d 489, 496 (1959); *see also Delardas v. Morgantown Water Comm'n*, 148 W.Va. 776, 784–85, 137 S.E.2d 426, 433 (1964) ("In vesting the public service commission with the jurisdiction and the power to regulate and control the public utilities in this State, the Legislature has authorized it to exercise the. predominant power of the State with respect to such utilities. . . .") Besides being contrary to explicit legislative intent, allowing county commissions to displace the PSC in determining service rights would be disastrous for consumers, whose access to utilities within a public service district would hinge upon the district's construction of facilities, and extension of lines to their homes and businesses, even if service were readily available from municipal or privately owned utilities. As the PSC has asserted in these proceedings, "[t]he exigencies that arise in public utility operation require the flexibility of a regulatory agency, such as the Public Service Commission, to review the particular factual circumstance and permit the extension of utility services by the utility that is most appropriate under the circumstances."

### B.

*W.Va.Code* § 16–13A–8

■ Two different portions of *W.Va.Code* § 16–13A–8 (1981) are relevant to these proceedings. The first portion states that a public service district may acquire, construct, maintain and operate any public service properties within the corporate limits of any city,

> Provided, that if any incorporated city . . . included within the district owns and operates either water facilities, sewer facilities . . . or all of these, then the district may not acquire, construct, establish, improve or *extend* any public service properties of the same kind within such city . . ., except upon the approval of the public service commission, the consent of such cities. . . .

*W.Va.Code* § 16–13A–8 (1981) (emphasis added). The City maintains that this language provides plainly that a public service district may not, without municipal and PSC

consent, extend utility facilities inside a city that is in the business of providing the utility service in question. The succeeding paragraph of *W.Va.Code* § 16–13A–8 provides:

> Whenever such district has constructed, acquired or established water facilities, sewer facilities . . . within any city . . . included within a district, then such city . . . may not thereafter construct, acquire or establish any facilities of the same kind within such city . . . without the consent of such district.

Counsel for the PSC interprets the language of these two provisions as creating "a no man's land in which the Districts could not serve the area under one paragraph and the City could not serve the area under another paragraph." Because of this purported "gap in the statutory scheme," the PSC's counsel suggests that it is within the broad authority of the PSC to fill the gap and that the agency's interpretation must be given great weight. The Water District and Sewer District bring yet a third approach to the table. The districts contend that the apparent conflict between the pertinent provisions of *W.Va.Code* § 16–13A–8 should have been resolved by the PSC by reading *W.Va.Code* § 16–13A–8 *in pari materia* with *W.Va.Code* § 16–13A–2, as interpreted by the PSC in *Ohio County Public Service District*, Case No. 87–651–S–CN (June 17, 1988). We dispense first with the districts' argument.

■ In *Manchin v. Dunfee*, 174 W.Va. 532, 327 S.E.2d 710 (1984) this Court gave an informative dissertation on the rule of *in pari materia*, stating as follows:

> The rule of *in pari materia* means that "[s]tatutes which relate to the same subject matter should be read and applied together so that the Legislature's intention can be gathered from the whole of the enactments." Syllabus Point 3, *Smith v. State Workmen's Compensation Commissioner*, 159 W.Va. 108, 219 S.E.2d 361 (1975); *See also* Syllabus Point 3, *ACF Industries v. Credithrift of America*, 173 W.Va. 83, 312 S.E.2d 746 (1983); Syllabus Point 1, *Newton v. Dailey*, 167 W.Va. 347, 280 S.E.2d 91 (1981). It must be remembered that the rule of *in pari materia* is a

rule of statutory construction and is only utilized where there is some ambiguity in a particular statute, as we have held in Syllabus Point 1 of *State v. Epperly,* 135 W.Va. 877, 65 S.E.2d 488 (1951):

> The rule that statutes which relate to the same subject should be read and construed together is a rule of statutory construction and does not apply to a statutory provision which is clear and unambiguous.

*See* Syllabus Point 2, *State v. Jackson,* 145 W.Va. 51, 112 S.E.2d 452 (1960); *Douglass v. Koontz,* 137 W.Va. 345, 361, 71 S.E.2d 319, 329 (1952); *See also* 2A *Sutherland Statutory Construction* Sec. 51.01 (4th ed.1973).

Furthermore, to say that because several statutes relate to the same subject, they must always be read *in pari materia* is an oversimplification of the rule. First, it is apparent that what is meant by statutes relating to the same subject matter is an inquiry that is answered by how broadly one defines the phrase "same subject matter." Second, the application of the rule of *in pari materia* may vary depending on how integral the statutes are to each other. The rule is most applicable to those statutes relating to the same subject matter which are passed at the same time or refer to each other or amend each other. A diminished applicability may be found where statutes are self-contained and have been enacted at different periods of time. *See generally* 2A Sutherland Statutory Construction Sec. 51.01 (4th ed.1973). Finally, "a related statute cannot be utilized to create doubt in an otherwise clear statute." *See Douglass v. Koontz,* 137 W.Va. 345, 361–62, 71 S.E.2d 319, 328–29 (1952); *See also Heringer v. Rolf,* 287 S.W.2d 149 (Ky.1956); *Kozak v. Retirement Board of the Firemen's Annuity and Benefit Fund,* 95 Ill.2d 211, 69 Ill.Dec. 177, 447 N.E.2d 394 (1983); *International Brotherhood of Electrical Workers v. Gillen,* 174 N.J.Super. 326, 416 A.2d 446 (1980); *Sinclair v. Dept. of Health and Social Services,* 77 Wis.2d 322, 253 N.W.2d 245 (1977).

*Id.* at 535–36, 327 S.E.2d at 713–14.

As explained more fully below, we find that *W.Va.Code* § 16–13A–8 is clear and unambig-

uous. Consequently, we conclude that the PSC correctly refrained from applying the rule of *in pari materia* in interpreting *W.Va. Code* § 16–13A–8.

 The issue under consideration requires this Court to interpret *W.Va.Code* § 16–13A–8 under the facts of these consolidated proceedings. "Interpreting a statute ... presents a purely legal question...." Syl. pt. 1, *Appalachian Power Co. v. State Tax Dept. of West Virginia,* 195 W.Va. 573, 466 S.E.2d 424 (1995). We explained recently in Syllabus Point 11 of *Cox v. Amick,* 195 W.Va. 608, 466 S.E.2d 459 (1995), that " '[t]he primary object in construing a statute is to ascertain and give effect to the intent of the Legislature.' Syllabus Point 1, *Smith v. State Workmen's Compensation Commissioner,* 159 W.Va. 108, 219 S.E.2d 361 (1975)." Syl. pt. 2, *Farley v. Buckalew,* 186 W.Va. 693, 414 S.E.2d 454 (1992). "Syl. pt. 2, *State ex rel. Water Development Authority v. Northern Wayne County Public Service District,* 195 W.Va. 135, 464 S.E.2d 777 (1995)." " '[A] common maxim of statutory construction is that statutes are to be construed so as to give meaning to every word in them.' " *Keatley v. Mercer County Bd. Of Educ.,* 200 W.Va. 487, 493, 490 S.E.2d 306, 312 (1997) (*quoting Bullman v. D & R Lumber Co.,* 195 W.Va. 129, 133, 464 S.E.2d 771, 775 (1995)). Similarly, this Court has previously recognized the "traditional rule of statutory construction that 'the Legislature is presumed to intend that every word used in a statute has a specific purpose and meaning.' " *Keatley,* 200 W.Va. at 495, 490 S.E.2d at 314.

Giving meaning to every word in *W.Va. Code* § 16–13A–8, we observe that the first and second portions of the statute are almost parallel provisions, applicable where the boundaries of a city and public service district are overlapping so that the city is "included within" the district, as in the instant proceedings. The first portion outlines actions which a public service district is barred from taking without the city's consent (and PSC approval) when the city already owns and operates water or sewer facilities, while the second portion of the statute sets forth

the actions which a city cannot take without the district's consent when the district has constructed, acquired or established water or sewer facilities within the city. There is, however, one striking and crucial difference. The verb "extend" is included among the prohibited actions in the first portion of the statute, but not in the second portion. Thus, a public service district is barred from *extending* water and sewer facilities where a city within its borders owns and operates such facilities, but there is no parallel ban on *extension* imposed upon a city.

■ In enacting *W.Va.Code* § 16–13A–8, "the Legislature has directly spoken to the precise question at issue." Syl. pt. 3, *Appalachian Power, supra.* By all accounts, these proceedings concern the *extension* of existing facilities to serve Martin's Landing. Because the City here does not consent to the districts' extension of water and sewer facilities, the districts are precluded from extending such facilities under the provisions of *W.Va.Code* § 16–13A–8. The City, however, is not barred under the statute from extending its facilities to Martin's Landing, despite the districts' protests. Accordingly, under the facts of these proceedings, we hold that if a tract of real estate located within a public service district has been annexed into a municipality, then, as between the municipality and the public service district, the municipality has the superior right, under *W.Va.Code* § 16–13A–8 (1981), to extend water and/or sewer service which were not being previously furnished to the tract by the public service district. Under those circumstances, a public service district would need the consent of the municipality and the Public Service Commission in order to provide such services. The PSC's ultimate decision that "the City should provide water and sewer service to Picerne" comports with this holding.

Although the PSC's final award was consistent with the controlling language of *W.Va.Code* § 16–13A–8, the PSC failed to grasp the clear application of the statute to this matter, and instead concluded incorrectly that "this dispute involves the application of at least two conflicting statutes." We,

thus, affirm the final holding of the PSC for the reasons aforesaid.

■ The districts advance two additional arguments, neither of which is meritorious. First, the districts argue that public policy factors dictate that they, and not the City, be permitted to serve Martin's Landing. After careful review of the record, we conclude that the PSC's award of service to the City "may reasonably be expected to ... provide appropriate protection to the relevant public interests, both existing and foreseeable." Syl. pt. 2, *Monongahela Power, supra.* In reaching this conclusion, we are mindful that this Court's responsibility is "not to supplant the Commission's balance of these interests with one more nearly to its liking, but instead to assure itself that the Commission has given reasoned consideration to each of the pertinent factors." *Id.* Second, the districts contend that the PSC's ruling ignored the rights and obligations arising under certain contracts, which the districts have entered into with the City and with their bondholders. This argument is not compelling since *W.Va.Code* § 16–13A–8 was enacted in 1953, prior to the dates of these contracts. It is axiomatic that " '[t]he clauses of the Constitution of the United States and the Constitution of West Virginia which forbid the passage of a law impairing the obligation of a contract are not applicable to a statute enacted prior to the making of a contract.' " Syllabus Point 2, *Shell v. Metropolitan Life Ins. Co.,* 181 W.Va. 16, 380 S.E.2d 183 (1989). Furthermore, in *City of Charleston v. Public Service Commission of West Virginia,* 57 F.3d 385 (4th Cir.1995), the Fourth Circuit Court of Appeals noted that under West Virginia law " '[a]ll contracts made by a utility relating to the public service must be deemed to be entered into in contemplation of the exercise by the state of its regulatory power whenever the public interest may make it necessary....' *Preston County Light & Power Co. v. Renick,* 145 W.Va. 115, 113 S.E.2d 378, 387 (1960); *See also United Fuel Gas Co. v. Battle,* 153 W.Va. 222, 167 S.E.2d 890, 904, *cert. denied,* 396 U.S. 116, 90 S.Ct. 398, 24 L.Ed.2d 309 (1969)." Quoting Justice Holmes, the Fourth Circuit stated:

One whose rights, such as they are, are subject to state restriction, cannot remove them from the power of the State by making a contract about them. *Hudson County Water Co. v. McCarter,* 209 U.S. 349, 357, 28 S.Ct. 529, 531, 52 L.Ed. 828 (1908); *See also United States Trust,* 431 U.S. at 22, 97 S.Ct. at 1517; *Bannum, Inc. v. Town of Ashland,* 922 F.2d 197, 202–03 (4th Cir.1990).

*Id.* at 392.

### V.

### *Conclusion*

Therefore, upon all of the foregoing, this Court concludes that the complaints filed by the districts were appropriately dismissed by the PSC.

Affirmed.

Chief Justice DAVIS and Justices WORKMAN, STARCHER and MAYNARD joined in the Opinion of the Court.

Justice McGRAW did not participate in the decision of this case.